### STEVEN K. LICHTMAN ET AL. *v.* BRIAN S. BENI ET AL. (SC 17541)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued April 10—officially released September 19, 2006

*David L. Weiss*, with whom was *Michael J. Brandi*, for the appellant (defendant Gazebo Horticultural, Inc.).

*John T. Shaban*, for the appellees (plaintiffs).

*Opinion*

BORDEN, J. The defendant Gazebo Horticultural, Inc.,[1] appeals[2] from the judgment of the trial court, which granted the application by the plaintiffs, Steven K. Lichtman and Michelle Lichtman, for discharge of a

---

[1] In their complaint, the plaintiffs also brought claims against Brian S. Beni, the president of Gazebo Horticultural, Inc. The action later was withdrawn as against Beni. Accordingly, we refer to Gazebo Horticultural, Inc., as the defendant.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

mechanic's lien pursuant to General Statutes §§ 49-35a and 49-35b.[3] The defendant claims that the trial court: (1) should have dismissed the plaintiffs' application based on the prior pending action doctrine; and (2) misapplied the "bad faith exception" to the Home Improvement Act, General Statutes § 20-418 et seq. See, e.g., *Habetz* v. *Condon*, 224 Conn. 231, 236, 618 A.2d 501 (1992). We conclude that we cannot grant the defendant any practical relief because the plaintiffs effected the lien's discharge upon filing the court's order discharging the lien on their municipality's land records.[4] Accordingly, we dismiss the defendant's appeal as moot.[5]

---

[3] General Statutes § 49-35a (a) provides in relevant part: "Whenever one or more mechanics' liens are placed upon any real estate pursuant to sections 49-33, 49-34, 49-35 and 49-38, the owner of the real estate, if no action to foreclose the lien is then pending before any court, may make application, together with a proposed order and summons, to the superior court for the judicial district in which the lien may be foreclosed under the provisions of section 51-345, or to any judge thereof, that a hearing or hearings be held to determine whether the lien or liens should be discharged or reduced. . . ."

General Statutes § 49-35b provides: "(a) Upon the hearing held on the application or motion set forth in section 49-35a, the lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. Any person entitled to notice under section 49-35a may appear, be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained or the amount of the lien claimed is excessive and should be reduced.

"(b) Upon consideration of the facts before it, the court or judge may: (1) Deny the application or motion if probable cause to sustain the validity of the lien is established; or (2) order the lien discharged if (A) probable cause to sustain its validity is not established, or (B) by clear and convincing evidence its invalidity is established; or (3) reduce the amount of the lien if the amount is found to be excessive by clear and convincing evidence; or (4) order the lien discharged or reduce the amount of the lien conditioned upon the posting of a bond, with surety, in a sum deemed sufficient by the judge to indemnify the lienor for any damage which may occur by the discharge or the reduction of amount."

[4] The Appellate Court, prior to the transfer of the case to this court, asked the parties to brief and prepare for oral argument on the issue of mootness and the related question of what authority the trial court would have to reinstate a discharged mechanic's lien. We then considered these questions based upon their briefs and oral argument in this court.

[5] In light of this conclusion, we do not reach the merits of the defendant's claims.

The defendant had performed landscaping services at the plaintiffs' home. Thereafter, the defendant filed a mechanic's lien against the plaintiffs' property. The plaintiffs brought this action to discharge the mechanic's lien filed by the defendant. The trial court granted the plaintiff's application and ordered the lien discharged. This appeal followed.

The record reflects the following undisputed facts. In September, 2002, the plaintiffs hired the defendant to perform extensive landscaping work on their home at 15 Andrews Farm Road in Greenwich. Initial estimates placed the project's cost at approximately $550,000. Despite this substantial sum, the parties did not reduce their agreement to writing.[6] The defendant commenced work immediately. The plaintiffs made periodic payments over the course of the next eighteen months, and by June, 2004, they had paid more than $600,000 to the defendant. At that time, the relationship between the parties soured, and work on the project ceased. According to the defendant, the plaintiffs owed approximately $350,000 for work performed. When they refused to pay, the defendant filed a mechanic's lien on the plaintiffs' property and duly recorded the instrument on the Greenwich land records.[7]

The plaintiffs then commenced an action against the defendant, seeking money damages and an order dis-

[6] This fact was to be the lynchpin of the plaintiffs' case. General Statutes § 20-429 (a) provides in relevant part that "[n]o home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ."

[7] The amount of the lien, $424,860.88, is undisputed. The defendant's president, explaining the discrepancy between the lien and the balance due, stated that the lien did not reflect $100,000 that the defendant had received in cash from the plaintiffs, which it was holding until the job's completion.

charging the mechanic's lien. In their complaint, the plaintiffs alleged: (1) negligent construction; (2) violation of the Home Improvement Act; (3) violation of the Connecticut Unfair Trade Practices Act; General Statutes § 42-110a et seq.; and (4) slander of title. Under the same docket number as their pending lawsuit, the plaintiffs later filed the application for discharge of the defendant's mechanic's lien pursuant to § 49-35a that is the subject of the present appeal.[8] The defendant, arguing that the application and complaint were separate but " 'virtually alike' " proceedings, moved to dismiss the application on the basis of the prior pending action doctrine. The plaintiffs responded by filing a revised complaint, which changed their prayer for relief to reflect the pending application.[9] Subsequently, the trial court denied the defendant's motion to dismiss and heard evidence regarding the application. The trial court rendered judgment discharging the mechanic's lien on the basis of General Statutes § 20-429 (a),[10] and concluded that the proven bad faith on the part of the plaintiffs[11] did not fall under the *Habetz* bad faith

---

[8] See footnote 3 of this opinion.

[9] In their revised complaint, the plaintiffs requested a discharge, "[t]o the extent that the application [did] not effect [one] . . . ." This language reflected the possibility that the trial court could find, pursuant to §§ 49-35a and 49-35b, that there was probable cause to sustain the validity of the lien, but ultimately determine, after a trial on the merits of the plaintiffs' claims, that the lien was invalid. In other words, the plaintiffs' amended complaint simply preserved their ultimate prayer for equitable relief on the merits, while acknowledging their simultaneous use of the application mechanism set forth in § 49-35a to obtain immediate, injunctive relief.

[10] See footnote 6 of this opinion.

[11] The trial court found that Steven K. Lichtman's behavior indicated duplicity and that his evasive demeanor evidenced the likelihood that he was using corporate funds, which he would then write off, in order to reduce his income and thereby avoid taxes. The court found no causal link, however, between the proven bad faith on the part of the plaintiffs and the defendant's failure to comply with the requirements of the Home Improvement Act. The trial court concluded, therefore, that the defendant had not met its burden of showing probable cause to sustain the validity of its mechanic's lien. Because the appeal must be dismissed as moot, we review neither the trial court's findings of fact nor its conclusions of law.

exception to the Home Improvement Act. This appeal followed.

The defendant claims that the trial court: (1) improperly declined to dismiss the plaintiffs' application for discharge of the mechanic's lien under the prior pending action doctrine; and (2) misapplied the bad faith exception to the Home Improvement Act. We conclude that the appeal is moot because the defendant did not secure and record a stay of the court's order discharging the lien and because the plaintiffs duly recorded that order in their municipality's land records.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Private Healthcare Systems, Inc.* v. *Torres*, 278 Conn. 291, 298–99, 898 A.2d 768 (2006). "[A] subject matter jurisdictional defect may not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 703, 894 A.2d 259 (2006).

The following additional facts are relevant to our conclusion that this appeal was rendered moot by the recording, on the Greenwich land records, of the court's order discharging the lien. The trial court rendered its judgment on April 4, 2005. The defendant, on April 11, 2005, filed its appeal within seven days of the trial court's judgment, as required by General Statutes § 49-35c (b),[12] but the defendant never requested a stay of that judgment pursuant to that statute. The plaintiffs proceeded to file the court's order of discharge on the Greenwich land records as follows. They first recorded, on April 21, 2005, an affidavit from their attorney, which referenced an attached copy of the trial court's transcript. The plaintiffs then requested a formal, written

---

[12] General Statutes § 49-35c provides: "(a) Any order entered as provided in subsection (b) of section 49-35b shall be deemed a final judgment for the purpose of appeal.

"(b) No appeal may be taken from the order except within seven days thereof. The effect of the order shall be automatically stayed for the seven-day period. If an appeal is taken within the seven-day period, the party taking the appeal may, within that period, file an application with the clerk of the court in which the order was issued, requesting a stay of the effect of the order pending the appeal, which application shall set forth the reasons for the request. A copy of the application shall be sent to each other party by the applicant. Upon the filing of the application, the effect of the order shall be further stayed until a decision is rendered thereon. A hearing on the application shall be held promptly. The order shall be stayed if the party taking the appeal posts a bond, as provided in subsection (c) of this section.

"(c) Upon the hearing on the application, the court shall: (1) Upon motion of the party taking the appeal, set a bond with surety for the stay of the order as provided in subsection (b) of this section, in an amount which the court deems sufficient to indemnify the adverse party for any damages which may result from the stay. If the party taking the appeal gives that bond the order shall be stayed; or (2) grant the stay; or (3) deny the stay; or (4) condition the granting of the stay upon the giving of such a bond.

"(d) Any order of discharge or reduction or any order of any such stay shall take effect upon recording of a certified copy thereof in the office of the town clerk in which such lien was originally recorded. The clerk of the court in which any such order is issued shall not deliver any certified copies thereof until the time for taking an appeal has elapsed or, if an appeal is taken and an application for a stay of the order is filed, until such time as a decision granting or denying the stay has been rendered."

order from the clerk of the court,[13] which they filed on the Greenwich land records on May 9, 2005.

Section 49-35c[14] provides the procedures by which a party whose lien has been ordered discharged pursuant to § 49-35b (b), may stay the effect of that order. Section 49-35c (a) provides that an order entered pursuant to § 49-35b (b) is a final judgment for the purposes of appeal. Section 49-35c (b) requires that an appeal be taken within seven days of the court's judgment, but provides an automatic stay during that period. The appealing party may also, within that seven day window, apply for a stay of the effect of the order pending appeal. See General Statutes § 49-35c (b). The filing of an application for a stay automatically extends the initial seven day stay until a decision on the application is rendered. See General Statutes § 49-35c (b). Accordingly, a stay is only automatic, under § 49-35c, for seven days from the date of the court's order discharging the lien, unless within those seven days the aggrieved party appeals the order *and* applies for a further stay pending appeal, in which case the seven day stay automatically is extended until the court renders its decision as to whether to stay the effect of its order until the appeal is decided.

In addition, a party who applies for a stay pending an appeal from an order entered under § 49-35b (b) must either persuade the court to grant its request or post a sufficient bond, or both. See General Statutes § 49-35b (c). Finally, § 49-35c (d) provides that any order of discharge, reduction or stay shall take effect upon the recording of a certified copy thereof in the appropriate land records. To prevent the recording of an order during a stay, automatic or otherwise, § 49-35c (d)

---

[13] The court provided the plaintiffs with a written order after the plaintiffs, to the court's satisfaction, briefed the appropriateness of such an order in light of the defendant's pending appeal.

[14] See footnote 12 of this opinion.

prevents court clerks from delivering certified copies of any such judgments until the time for taking an appeal has lapsed or, if an appeal is taken and an application for stay filed, until a decision on whether to grant the stay has been rendered. The thrust of § 49-35c (d) is that the party who requests a discharge, reduction or stay has the further obligation to record the court's order on the land records, and that any such order takes effect upon that recording.

Except for its timely appeal, the defendant satisfied no part of § 49-35c. Because the defendant never requested a stay, the court never ordered one. Furthermore, because the court never ordered a stay, the clerk of the court never delivered a copy of such an order. The defendant, thus, had no order to file on the land records, and accordingly, there was no stay in effect. It was, therefore, appropriate that, after the expiration of the automatic stay under § 49-35c (b), the clerk of the court issued a certified copy of the court's discharge order to the plaintiffs. The plaintiffs then properly filed the certified copy of the court's discharge order on the land records. Thus, pursuant to § 49-35c (d), upon the recording of the court's order discharging the lien, there was no lien, the validity of which could be affected on appeal. That rendered this appeal moot.

The defendant contends, however, that the appeal is not moot because: (1) § 49-35c (b) does not require an appellant to request a stay from the court; and (2) this court has the equitable power to reinstate the mechanic's lien by reversing its discharge by the trial court. We are not persuaded.

First, the defendant argues that its failure to request a stay pursuant to § 49-35c (b) does not render the appeal moot. The defendant's argument appears to rest on the permissive language of § 49-35c (b), which provides that "the party taking the appeal *may* . . . file

an application . . . requesting a stay . . . ." (Emphasis added.) The import of the defendant's argument is that a stay somehow comes into effect even in the absence of an application to secure one. Under that theory, however, an appellant would have no reason to apply for a stay, and this entire statutory scheme would be merely advisory. See *Semerzakis* v. *Commissioner of Social Services*, 274 Conn. 1, 18–19, 873 A.2d 911 (2005) ("[T]he legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." [Internal quotation marks omitted.]). The statutory scheme of § 49-35c, however, sets forth the procedure for securing and recording a stay, and the effect of *not* securing and recording one: the recording of an unstayed, properly issued discharge order effectuates that discharge order. Thus, the defendant's argument fails to take into account that, in the absence of a stay, the trial court's order discharging the lien was effected upon its filing in the town land records.

Second, the defendant argues that this court has the equitable power to reinstate the mechanic's lien.[15] To hold accordingly, however, would be to wreak untenable uncertainty upon, and undermine the integrity of, the land recording system. A title searcher who sees a discharge order should be able to rely on the premise of § 49-35c (d) that such an order of discharge took effect upon its recording, and that the clerk of the court would not have issued it unless the provisions of that subsection had been satisfied, including the provisions regarding a stay. Even if such a title searcher were then to search the judicial records to confirm that no stay had been timely secured, he or she would, under the

---

[15] In short, the defendant's theory is that were we to reverse the order of discharge, this court's order reversing the discharge would also be filed in the chain of title.

defendant's theory, nonetheless have to await the outcome of an appeal to determine the lien's ultimate validity. This would effect a cloud on the title, holding the title hostage until the appeal's disposition, despite the fact that the defendant had an easy remedy, provided by § 49-35c, to avoid the issuance of a discharge order in the first place. We conclude that the better construction of the statutes, and the better public policy, is to put the burden on the lienor to secure a stay under the provisions of § 49-35c (b).[16]

We agree with the plaintiffs that homeowners should not have to wake up to find their property encumbered by a resurrected lien. Property owners, prospective purchasers, potential lenders, title searchers and title insurers alike must each be able to rely confidently on the integrity of the land records. Undoubtedly, it is for this reason that the legislature deems filing the method by which to effect a discharge and, moreover, requires courts not to deliver certified copies of such orders "until the time for taking an appeal has elapsed or, if an appeal is taken *and an application for a stay of the order is filed,* until such time as a decision granting or denying the stay has been rendered." (Emphasis added.) General Statutes § 49-35c (d).

Section 49-35c provides appellants from judgments discharging mechanic's liens with the remedy of receiving a stay of the effect of discharge. In failing to avail itself of that option, the defendant bore the risk that

---

[16] We note, however, that our decision relies on the nature of a discharge order and the importance of its presence on the land records. This is not a matter involving the premature execution of a judgment for money damages. See, e.g., *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 414–15, 525 A.2d 83 (1987) ("[A]n order of execution, in the absence of a stay, does not moot the justiciability of a pending appeal. If a judgment has been satisfied before it is reversed . . . the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost . . . ." [Citation omitted; internal quotation marks omitted.]).

the plaintiffs would record the discharge order on the land records before its appeal could be decided. Because the discharge order was duly issued and recorded, the lien no longer exists. We are unwilling to undermine the integrity of the land records and, therefore, are unable to provide the defendant with any practical relief.

The appeal is dismissed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of argument.