## KEVIN V. O'DONNELL *v.* CITY OF WATERBURY ET AL.
### (AC 29022)

Bishop, Harper and Hennessy, Js.

Argued April 23—officially released October 28, 2008

*Paula N. Anthony*, assistant corporation counsel, for the appellants (defendants).

*Francis J. Grady*, with whom, on the brief, was *Richard O. LaBrecque*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendants, the city of Waterbury (city) and the Waterbury retirement board (board), appeal from the Superior Court's judgment in favor of the plaintiff, retired police Officer Kevin V. O'Donnell,

claiming that the court improperly found that the collective bargaining agreement between the city and the police union requires the board to complete a whole person disability evaluation and that the board abused its discretion when it denied O'Donnell a continuance to seek further medical evaluations. We disagree and affirm the judgment of the trial court.

The following facts are not in dispute. At all times relevant to this matter, O'Donnell was a member of the police union and subject to the terms and conditions of the 2000-2005 collective bargaining agreement between the city and the police union. On June 1, 2005, O'Donnell submitted to the board an application for retirement seeking both service pension and disability retirement. O'Donnell based his claim for disability retirement on heart and hypertension problems and injuries to his back and right knee, all of which he sustained while performing his duties as a police officer. Consequently, pursuant to the 2000-2005 collective bargaining agreement, O'Donnell submitted to independent medical examinations by two cardiologists and two orthopedic physicians selected by the city. One of the orthopedic physicians recommended that O'Donnell be reevaluated after follow-up surgery on his right knee was complete. The other physician was apparently unaware of the scheduled follow-up surgery. Neither the orthopedic nor the cardiac physicians concluded that O'Donnell was totally and permanently disabled at that time from performing his duties as a police officer due to either hypertension or orthopedic injuries.

O'Donnell underwent an additional surgery on his right knee in December, 2005. At his January 12, 2006 hearing before the board, O'Donnell requested a continuance for the purpose of reassessing his knee in light of the recently completed surgery and an ensuing soft tissue infection. The board denied his request for a continuance and denied his application for disability retirement.

O'Donnell appealed from the decision of the board to the Superior Court for the judicial district of Waterbury, claiming that the board violated the terms of the collective bargaining agreement by failing to assess the combined or "whole person" effect of his cardiac and orthopedic disabilities. Additionally, O'Donnell claimed that the board abused its discretion when it denied his request for a continuance. The court agreed with O'Donnell, holding that the collective bargaining agreement provided the "right to a whole person evaluation . . . ." The court continued: "Any other interpretation does not make sense. The question is whether the person is permanently and totally disabled from working. It is conceivable that such disability can and sometimes does result from a combination of conditions. It is therefore the entire person that must be evaluated for purposes of determining disability." Additionally, the court concluded that the board abused its discretion by failing to grant the requested continuance. The court remanded the case to the retirement board for further medical examinations of O'Donnell and for a new hearing to determine whether he is permanently and totally disabled. Subsequently, the defendants appealed to this court.[1]

At oral argument on this appeal, the defendants, citing a recent Superior Court ruling,[2] raised the issue of sub-

---

[1] Despite the fact that the court remanded this case to the board for a new hearing, this appeal is properly taken from a final judgment. Our Supreme Court has determined that a judicial order for further administrative proceedings because an administrative ruling was in error is a final judgment. *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 410, 521 A.2d 566 (1987). The right of appeal from this type of judicial order "avoid[s] the possibility that further administrative proceedings would simply reinstate the administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue." Id. Accordingly, the judgment of the court is an appealable final judgment.

[2] *Russo* v. *Waterbury*, Superior Court, judicial district of Waterbury, Docket No. X01-CV-08-4015095-S (April 16, 2008) (dismissing five counts of plaintiff's complaint on ground that court lacked subject matter jurisdiction as there was no statutory right to bring plaintiff's administrative appeal).

ject matter jurisdiction for the first time, arguing that O'Donnell has no statutory right of appeal from a decision of the board.[3] The question of whether the trial court had subject matter jurisdiction to hear this case can be raised at any time and must be answered before we can proceed to the issues originally raised on appeal. See *Lichtman* v. *Beni*, 280 Conn. 25, 30, 905 A.2d 647 (2006); *Fennelly* v. *Norton*, 103 Conn. App. 125, 134, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007). As the determination of subject matter jurisdiction is a question of law, our review is plenary. *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). Additionally, "[i]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Novak* v. *Levin*, 287 Conn. 71, 79, 951 A.2d 514 (2008).

Traditionally, our Supreme Court has held that appeals to courts from administrative decisions exist only under statutory authority, with the notable exception that "[i]f any person claims to be harmed by such an order, his constitutional right to due process is protected by his privilege to apply to a court." (Internal quotation marks omitted.) *Rybinski* v. *State Employees' Retirement Commission*, 173 Conn. 462, 473, 378 A.2d 547 (1977).

We begin by assessing whether O'Donnell had a statutory right to appeal from the board's decision under the terms of the Waterbury city charter (charter). It is undisputed that at the time the collective bargaining agreement was entered into, the charter provided a right of appeal to the Superior Court for any person aggrieved by a decision of the board. See Waterbury

---

[3] The parties submitted simultaneous supplemental briefs on whether O'Donnell has a statutory right of appeal or, in the alternate, a plenary right of action against the defendants.

Charter, § 2709. The authority for the charter's grant of a right of appeal comes directly through the legislature's enactment of 26 Spec. Acts 297, No. 460, § 8 (1951) (Special Act 51-460). In fact, the language providing a right of appeal in Special Act 51-460 is identical to the language providing that same right in the charter. "[A] town charter, whether adopted by special act of the General Assembly or . . . under the Home Rule Act; General Statutes § 7-188; constitutes the organic law of the municipality. . . . It is well established that a [town's] charter is the fountainhead of municipal powers. . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." (Citations omitted; internal quotation marks omitted.) *West Hartford Taxpayers Assn., Inc.* v. *Streeter*, 190 Conn. 736, 742, 462 A.2d 379 (1983).

The defendants claim, however, that this appeal was filed pursuant to an amended pension and retirement ordinance, § 35.20, which was adopted by Waterbury's board of alderman in 2003 and which replaced the language regarding pension and retirement appeals in the charter. The defendants argue that even though the ordinance describes an appeal process similar to that in the charter, because a municipal ordinance cannot confer jurisdiction for an administrative appeal, the court does not have subject matter jurisdiction to hear O'Donnell's appeal. We disagree.

The ordinance in question, § 35.20, echoes the charter language granting a right of appeal from the board's pension and retirement decisions. The legislature, through enactment of § 7-188 (a), specifically authorized that "[a]ny municipality, in addition to such powers as it has under the provisions of the general statutes or any special act, shall have the power to . . . adopt and amend a charter which shall be its organic law and shall supersede any existing charter, including amendments thereto, and all special acts inconsistent with

such charter or amendments, which charter or amended charter may include the provisions of any special act concerning the municipality but which shall not otherwise be inconsistent with the Constitution or general statutes . . . ." Notably, the ordinance does not create a right of appeal but merely amends an existing right, extending the number of days an aggrieved person has to appeal and streamlining the language describing the appeal proceedings.[4] Consequently, we conclude that O'Donnell retains his statutory right of appeal under the city's charter and that the court properly had subject matter jurisdiction for this appeal.

Having established that the trial court had subject matter jurisdiction, we now turn to the claims originally raised on appeal. First, we set forth the applicable standard of review. "Where the administrative agency has made a factual determination, the scope of review ordinarily is expressed in such terms as substantial evidence or sufficient evidence. . . . Where, however, the administrative agency has made a legal determination, the scope of review ordinarily is plenary." (Internal quotation marks omitted.) *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 721, 780 A.2d 1 (2001).

The defendants claim that the court incorrectly found that article XXIII, § 12, of the 2000-2005 collective bargaining agreement, which contains the terms and conditions governing disability retirement, requires that the board evaluate the combined effects of all of O'Donnell's claimed injuries in determining whether he is permanently and totally disabled from performing the

---

[4] We note that the charter allows fifteen days for an appeal from a decision of the board while the ordinance allows thirty days. As the defendants failed to raise the issue of timeliness both at the time of filing and in their supplemental briefs, we consider it waived. See *Ecker* v. *West Hartford*, 205 Conn. 219, 232, 530 A.2d 1056 (1987).

essential duties of a police officer. Additionally, the defendants argue that because none of the examining physicians' reports supports a finding of permanent and total disability for O'Donnell's independent injuries, the board was not required to conduct a comprehensive evaluation.

"The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the . . . construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 743–44, 945 A.2d 936 (2008).

O'Donnell's application for retirement disability triggered article XXIII, § 12, of the collective bargaining agreement, which provides in pertinent part: "Any police participant totally and permanently disabled during the performance of essential duties pertaining to his employment, shall upon application in a form prescribed by the Retirement Board, be retired for disability, provided proof of total disability is submitted to the Retirement Board by reports of examinations to be

made by at least two (2) impartial competent medical examiners appointed by the Retirement Board . . . ."

In reviewing the language of article XXIII, § 12, we agree with the trial court that the terms of the contract language are unambiguous. Specifically, the purpose of the reports from the independent medical examiners is to provide proof of "total disability." Black's Law Dictionary defines total disability as the following: "A worker's inability to perform employment-related duties because of a physical or mental impairment." Black's Law Dictionary (8th Ed. 2004). Additionally, article XXIII, § 12, lacks particularized language such as that found in a workers' compensation schedule. A rational reading of the term "total disability" indicates that the board is responsible for evaluating whether the person is capable of performing the essential duties of a police officer and not solely whether the person's right knee or heart, in isolation, renders him disabled. As a matter of common sense, it is plausible that total disability can result from a combination of partial disabilities relating to different parts of one's body. The only logical interpretation of article XXIII, § 12, requires the board to evaluate a police officer's injuries in their totality to determine their impact on his or her ability to continue to work. Although we cannot predict whether a comprehensive evaluation will result in a determination that O'Donnell is totally and permanently disabled, and we leave to the board the determination of whether additional medical examinations of O'Donnell are required for a fair assessment of his disability claims, we do conclude that the language of the collective bargaining agreement requires the board to take into consideration the aggregate impact of an applicant's separate employment related injuries and infirmities in making its ultimate determination.

The final issue that the defendants challenge on appeal is the court's conclusion that the board abused

its discretion by failing to grant O'Donnell's requested continuance. The defendants argue that the denial of the continuance was well within the discretion of the board and was not so arbitrary as to violate O'Donnell's right to due process. We disagree.

"Requests for continuances invoke the discretionary authority of the adjudicating tribunal. [O]n review every reasonable presumption in favor of the [tribunal's] ruling will be made. . . . The [tribunal's] decision will be reversed only if it represents a gross abuse of discretion. . . . In deciding whether the denial of a continuance is so arbitrary as to violate due process, we have not resorted to mechanical tests but have instead examined closely the particular facts of each individual case." (Citation omitted; internal quotation marks omitted.) *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council*, 215 Conn. 474, 485, 576 A.2d 510 (1990). The party seeking the continuance has the burden of establishing good cause for such a continuance. *State* v. *Gordon*, 197 Conn. 413, 424B, 504 A.2d 1020 (1985).

In assessing whether the denial of a continuance amounts to an abuse of discretion, courts have considered a number of factors, including the legitimacy of the reason for the delay, the likely length of the delay, prior continuances, the requesting party's responsibility for the timing of the request and any prejudice or substantial impairment that a denial of the continuance would have on the requesting party's rights. *State* v. *Hamilton*, 228 Conn. 234, 240–41, 636 A.2d 760 (1994). In this case, when the board denied the continuance, it was aware that Richard Dyer, one of the board selected orthopedic surgeons who evaluated O'Donnell, had indicated in his report to the board that O'Donnell should be "appropriately re-evaluated for work status" after his second knee surgery. The board knew that O'Donnell had recently undergone a second surgery to his right knee, which, according to his physician, left

him temporarily totally disabled. Additionally, the board was aware that just one week prior to the hearing, O'Donnell had been diagnosed with a "superficial but somewhat threatening soft tissue infection" and found to be temporarily disabled. O'Donnell's initial knee injury was indisputably due to his employment as a police officer. Because the outcome of his second knee surgery remained uncertain and one of the physicians who had examined O'Donnell for the board recommended that he be reevaluated, O'Donnell's request for a continuance was legitimate.

Additionally, the denial of O'Donnell's requested continuance resulted in a substantial impairment of his rights. Given that at the time of the board's decision, the extent of O'Donnell's disability was uncertain, the board's refusal to grant him a continuance denied him an opportunity to present fairly his request for disability retirement. Furthermore, as the defendants acknowledged at oral argument, because O'Donnell retired in June, 2005, he was no longer eligible to file a second or amended application for disability. Accordingly, the board's refusal to grant the continuance and its subsequent denial of his application barred O'Donnell from consideration for disability retirement before the extent of his disabilities was known.[5] Any delay in the board's determination of O'Donnell's case due to the unresolved nature of his injuries was outweighed by his right to have his disability retirement determined on the basis

---

[5] The defendants argue that because O'Donnell submitted his application for retirement disability on the presumption that he was permanently and totally disabled at the time he filed his application, the board was only required to evaluate him as to the extent of his injuries at that time. Essentially, because a police officer cannot apply for disability retirement after retiring, the defendants argue that an officer must continue working with a disability until such time as the magnitude of that disability has been fully determined and then apply for disability retirement. This argument is irrational.

of the full extent of his employment injuries. Consequently, we conclude that the board abused its discretion when it denied his request for a continuance.

The judgment is affirmed.

In this opinion the other judges concurred.