# IN RE DIAMOND J.*
## (AC 31426)

DiPentima, C. J., and Beach and Robinson, Js.

Argued April 9—officially released May 25, 2010

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Gladys I. Nieves*, for the appellant (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Gloria L. Harris*, for the minor child.

*Opinion*

DiPENTIMA, C. J. The respondent mother of the minor child, Diamond J., appeals from the judgment of the trial court granting the motion of the petitioner, the commissioner of children and families, to open and to modify a disposition of protective supervision.[1] The court modified the judgment by terminating protective supervision and ordering that the child be committed to the petitioner. On appeal, the respondent claims that the court improperly found that it was in the child's best interest to be removed from the respondent's care. We affirm the judgment of the trial court.

The record reveals the following factual and procedural history. Diamond was born in August, 2007. On September 30, 2008, the petitioner filed a neglect petition, alleging that Diamond was being denied proper care and attention, physically, educationally, emotionally or morally, and was permitted to live under conditions, circumstances or associations injurious to her well-being. The petitioner further alleged that the family had a history of living in deplorable and overcrowded conditions, a history of transience and staying in overcrowded motels, and that Diamond had significant developmental delays, low weight and medical needs.

---

[1] The record reveals that the whereabouts of the father of Diamond are unknown. Because he is not a party to this appeal, we refer in this opinion to the respondent mother as the respondent.

A social study, dated October 24, 2008, stated that Diamond was "diagnosed with profound developmental and global delays, [h]ypoxic [i]schemic and [e]ncephalopathy [s]eizure, a pediatric metabolic disorder, which causes seizures and epilepsy and [m]icrocephaly." Her low weight placed her "way below the fifth percentile." The social study recommended that Diamond be adjudicated as neglected and placed under an order of protective supervision for a period of six months.

On December 16, 2008, the respondent entered a plea of nolo contendere to the neglect petition. The court ordered protective supervision effective December 16, 2008, to June 16, 2009, directing Diamond to reside with the respondent. The court further ordered certain specific steps[2] for the respondent, including complying with the directives of the department of children and families (department), keeping appointments set up by the department, learning appropriate caretaking techniques for a special needs child, cooperating with Diamond's various medical providers, including a nutritionist, securing and maintaining adequate housing and consistently and timely addressing all of Diamond's physical and medical needs.

On May 15, 2009, pursuant to General Statutes § 46b-121 and Practice Book §§ 34a-1 and 35a-16, the petitioner filed a motion to open and to modify the disposition from protective supervision to commitment. The motion, accompanied by a May 12, 2009 social study, alleged that Diamond's medical needs were not being addressed adequately in the respondent's home, that Diamond had continued to lose weight while in the respondent's care as a result of inadequate feeding and that Diamond's seizure activity had increased in recent months.[3]

---

[2] See General Statutes § 46b-129 (j) and Practice Book § 33a-6.

[3] The May 12, 2009 social study stated that Diamond's weight had decreased from seventeen pounds, four ounces in November, 2008, to fifteen pounds, four ounces on May 4, 2009.

On July 27, 2009, the court held a hearing on the petitioner's motion. Michael Cowan, a social worker employed by the department, testified. He stated that while the main concern with respect to Diamond was her weight loss, there were additional concerns pertaining to deplorable home conditions and a chaotic living environment. With respect to the home conditions, Cowan testified that during his visits, conditions had worsened from January, 2009, through the end of June, 2009. As an example, he stated that a strong penetrating odor of rotten food and garbage permeated the residence. He also had observed partially eaten food and a large amount of clutter in Diamond's room. Cowan further reported that Diamond developed scabies in June, 2009, and that this prevented her from receiving medical services for a period of three weeks. Cowan further indicated that a four year old child, known as Justin, would periodically stay in the residence. Justin displayed inappropriate behaviors, and a subsequent investigation by the department revealed that he was a victim of physical neglect and sexual abuse by his mother and her boyfriend. Cowan expressed concern that the respondent permitted Justin to stay in the same residence and to sleep in the same room as Diamond for a period of time after he acted inappropriately. Last, Cowan testified that there were other issues regarding the respondent's "poor judgment." He stated that she failed to keep a food log to record Diamond's caloric intake, she transported her on a city bus against medical advice to refrain from doing so and she allowed the maternal grandmother to have too great a role in decision making as to Diamond.

During cross-examination, Cowan acknowledged that the respondent had reported Justin's behaviors to him, that Diamond recently had gained weight following a change in medication and that the home conditions

had improved significantly the week prior to the hearing. The court then heard testimony from the respondent.

Immediately following the conclusion of the testimony and argument of counsel, the court issued an oral decision granting the petitioner's motion. The court summarized the testimony and the three primary issues before it, namely, Diamond's weight, the conditions of the home and Justin's presence in the home.[4] It then stated: "So, the court looks at all these factors in coming to the following conclusion: the court finds that the [petitioner] has met [her] burden with regard to [her] motion to modify the disposition in this case from [protective services] to commitment, finds that it is in the child's best interest to be committed to the care and custody of the [petitioner]. The court will issue that order. . . . The court is going to make the findings that continuation in the home will be contrary to the child's welfare. The court's also going to find that reasonable efforts were made to prevent removal, and the court notes that as a part of that finding it should be noted that there have been a number of services in the home with regard—pursuant to referrals by the department

---

[4] For example, the court stated: "[C]learly, the issue of the child's weight continues to be an issue. She's been gaining weight, there's evidence as to that, there's no question there's evidence as to that. And the specific reason why there was weight loss and why there may be some weight gain now, I don't think that's clear, but the issue concerning weight being a matter of concern for her is still present. That's still on the table. So, that's one thing the court had to consider."

Similarly, with respect to the matter of the condition of the home, the court stated: "Cowan testified with regard to the conditions based upon some of his visits that took place over the past couple of months. He's testified that upon some more recent visits to the property, the home had in fact appeared to be a lot cleaner, things were getting better. In fact, I think the term that was used was [that] there was some significant improvement in terms of how the place started to look, but there's no question that the home had been in a state at a point when . . . Cowan went to conduct the home visit that it raised significant concern for the department."

for services in the home to assist [the respondent] over the past number of months. Nonetheless, based on all the evidence that's come out at the hearing, the court finds that removal is in the child's best interest . . . ."[5] This appeal followed.

Practice Book § 35a-16 provides in relevant part: "Motions to modify dispositions are dispositional in nature based on the prior adjudication, and the judicial authority shall determine whether a modification is in the best interests of the child or youth upon a fair preponderance of the evidence. . . ." Additionally, we are mindful of our limited standard of review. "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . *A mere difference of opinion or judgment cannot justify our intervention. Nothing*

---

[5] General Statutes § 46b-129 (j) provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the Commissioner of Children and Families. Such commitment shall remain in effect until further order of the court, except that such commitment may be revoked or parental rights terminated at any time by the court, or the court may vest such child's or youth's care and personal custody in any private or public agency that is permitted by law to care for neglected, uncared-for or dependent children or youths or with any person or persons found to be suitable and worthy of such responsibility by the court. . . . The commissioner may place any child or youth so committed to the commissioner in a suitable foster home or in the home of a person related by blood to such child or youth or in a licensed child-caring institution or in the care and custody of any accredited, licensed or approved child-caring agency . . . ."

*short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.* . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Emphasis in original; internal quotation marks omitted.) *In re Patricia C.*, 93 Conn. App. 25, 32–33, 887 A.2d 929, cert. denied, 277 Conn. 931, 896 A.2d 101 (2006). Further, we note that "[g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . *We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached.* . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Emphasis in original; internal quotation marks omitted.) Id., 36.

In the present case, the court's oral decision consisted of approximately four pages of transcript. The first three pages contain a description and summary of the testimony presented during the hearing relating to Diamond's weight issues, the conditions of the home and the judgment of the respondent in permitting Justin to remain in the home after having exhibited abnormal behavior. The court then stated that it considered all of these factors in reaching its conclusion that the petitioner had met her burden in regard to the motion to modify the disposition from protective supervision to commitment.

The respondent failed to provide this court with a signed transcript of the court's oral decision. See Practice Book § 64-1 (a).[6] "When the record does not contain

---

[6] Practice Book § 64-1 (a) provides in relevant part: "If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office. . . ."

either a memorandum of decision or a transcribed copy of an oral decision signed by the trial court stating the reasons for its decision, this court frequently has declined to review the claims on appeal because the appellant has failed to provide the court with an adequate record for review. . . . If there is an unsigned transcript on file in connection with an appeal, the claims of error raised by the plaintiff may be reviewed if this court determines that the transcript adequately reveals the basis of the trial court's decision." (Citation omitted; internal quotation marks omitted.) *Solano* v. *Calegari*, 108 Conn. App. 731, 734 n.4, 949 A.2d 1257, cert. denied, 289 Conn. 943, 959 A.2d 1010 (2008). We conclude that the transcript does not adequately reveal the basis for the court's decision to grant the petitioner's motion to modify. The court's review of the evidence does not reveal its findings with respect to the factors the court considered in reaching its conclusion.

The respondent's failure to seek a signed transcript or subsequently to request an articulation[7] pursuant to Practice Book § 66-5 deprived the court of the opportunity to identify clearly the bases for its determination that commitment was in the best interest of Diamond. "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial

---

[7] "An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . It is the responsibility of the appellant to provide an adequate record for review as provided in [Practice Book §] 61-10." (Internal quotation marks omitted.) *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 319, 991 A.2d 666 (2010); see also *In re Coby C.*, 107 Conn. App. 395, 408 n.9, 945 A.2d 529 (2008).

court rendered its decision, thereby sharpening the issues on appeal. . . . [W]e will, in the absence of a motion for articulation, assume that the trial court acted properly." (Citation omitted; internal quotation marks omitted.) *In re G.S.*, 117 Conn. App. 710, 720, 980 A.2d 935, cert. denied, 294 Conn. 919, 984 A.2d 67 (2009).

We conclude that the unsigned transcript fails to reveal adequately the bases for the court's decision to grant the petitioner's motion to modify the disposition from protective supervision to commitment. As the appellant, the respondent bore the burden of providing this court with an adequate record to review the claims presented on appeal. Practice Book § 61-10; see also *In re Emerald C.*, 108 Conn. App. 839, 855 n.11, 949 A.2d 1266, cert. denied, 289 Conn. 923, 958 A.2d 150, 151 (2008). We therefore decline to review the claims raised on appeal due to an inadequate record.

The judgment is affirmed.

In this opinion the other judges concurred.