IRA B. STECHEL *v.* PATRICIA LYNN FOSTER
(AC 30985)

Harper, Robinson and Schaller, Js.

Argued September 7—officially released December 7, 2010

*Joseph T. O'Connor*, for the appellant (defendant).

*Heidi E. Opinsky*, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendant in this postjudgment marital dissolution matter, Patricia Lynn Foster, appeals from the judgment of the trial court ordering her to transfer to the plaintiff, Ira B. Stechel, funds from her interest in a defined benefit pension plan (pension

plan). On appeal, the defendant claims that the court's order was improper because (1) it constituted a post-judgment modification of the parties' agreement regarding the equitable division of the marital estate and (2) the court entered the order without holding an evidentiary hearing. We reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The parties' marriage was dissolved on May 21, 2008. The parties did not reduce their separation agreement to writing but orally conveyed the agreement to the court during the dissolution hearing. As part of the settlement agreement, the defendant was to transfer to the plaintiff, pursuant to a qualified domestic relations order (QDRO), her interest in a pension plan, which, at the time of the dissolution hearing, amounted to approximately $734,000. In addition, the defendant was to repay the plaintiff a loan of $50,000, which she had taken against the pension plan. At the conclusion of the court's canvass of the plaintiff concerning the separation agreement, the court noted: "It is the court's finding that between both of the parties it is understood that there should be, absent fluctuations, approximately $734,000 in [the] QDRO."

Subsequently, the defendant refused to sign the QDRO, and the plaintiff filed a motion to enjoin. On March 27, 2009, the court heard arguments on the motion to enjoin. At the time of the hearing, the defendant asserted that, due to poor economic conditions, the amount of money in the QDRO had decreased to approximately $605,000. The defendant argued that pursuant to the terms of the May 21, 2008 judgment of dissolution, the plaintiff was entitled to 100 percent of the funds in the QDRO but was not entitled to any fixed sum. Conversely, the plaintiff claimed that pursuant to the terms of the judgment he was entitled to a fixed sum of $734,000, to be paid out of the QDRO. At the conclusion of the hearing, the court granted the motion

to enjoin and ordered that "the QDRO with whatever existing amount be signed over to [the plaintiff] and then there should be a determination of a deficiency between that amount and the amount of the judgment, which was $734,000 plus . . . the $50,000 [which] has already been paid." The court also ordered that the defendant "pay . . . the deficiency from a sale of assets."

The defendant filed this appeal on April 15, 2009, claiming that the court's March 27, 2009 order was improper because it was a postjudgment modification of the court's May 21, 2008 judgment of dissolution and because the court issued it without holding an evidentiary hearing. We agree with the defendant as to the first claim and reverse the judgment of the trial court only to the extent that the judgment modifies the original property distribution. Because the defendant's second claim is related solely to the portion of the judgment that we reverse on the basis of her first claim, we need not reach the merits of her second claim.

As an initial matter, we note that, contrary to the requirements of Practice Book § 64-1, the defendant has failed to provide this court with a record that contains a memorandum of decision by the trial court or a signed transcript of an oral decision.[1] "It is the responsibility of the appellant to provide this court with an adequate record for review. See Practice Book § 61-10." *Wells*

---

[1] Practice Book § 64-1 (a) provides in relevant part: "The court shall state its decision either orally or in writing . . . in rendering judgments in trials to the court in civil and criminal matters . . . and . . . in making any other rulings that constitute a final judgment for purposes of appeal . . . . The court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office. . . ."

*Fargo Bank of Minnesota, N.A.* v. *Morgan,* 105 Conn. App. 856, 860, 941 A.2d 943 (2008). "When the record does not contain either a memorandum of decision or a transcribed copy of an oral decision signed by the trial court stating the reasons for its decision, this court frequently has declined to review the claims on appeal because the appellant has failed to provide the court with an adequate record for review." (Internal quotation marks omitted.) *In re Diamond J.,* 121 Conn. App. 392, 398–99, 996 A.2d 296, cert. denied, 297 Conn. 927, 998 A.2d 1193 (2010). Moreover, "[t]he requirements of Practice Book § 64-1 are not met by simply filing with the appellate clerk a transcript of the entire trial court proceedings." *Mikolinski* v. *Commissioner of Motor Vehicles,* 55 Conn. App. 691, 695, 740 A.2d 885 (1999), cert. denied, 252 Conn. 922, 747 A.2d 518 (2000); see also *Auric Answering Service, Inc.* v. *Glenayre Electronics, Inc.,* 54 Conn. App. 86, 88, 733 A.2d 307 (holding that requirements of Practice Book § 64-1 not satisfied where trial court signed transcript of entire proceeding), cert. denied, 250 Conn. 926, 738 A.2d 653 (1999). Despite an appellant's failure to satisfy the requirements of Practice Book § 64-1, this court has, "on occasion, reviewed claims of error in light of an unsigned transcript as long as the transcript contains a sufficiently detailed and concise statement of the trial court's findings." *Bank of America, FSB* v. *Franco,* 57 Conn. App. 688, 691 n.1, 751 A.2d 394 (2000).

In the present case, the record does not contain a memorandum of decision or a signed transcript of the court's oral decision.[2] The record does, however, contain an unsigned transcript of both the May 21, 2008

---

[2] It appears that the defendant did request that the court sign the transcript of its oral decision of March 27, 2009, but the court did not comply with that request. In the event that the trial court fails to comply with the requirements of Practice Book § 64-1 (a), it is incumbent on the appellant to follow the procedure set forth in Practice Book § 64-1 (b) to ensure an adequate record for review. Pursuant to § 64-1 (b), "[i]f the trial judge fails to file a memorandum of decision or sign a transcript of the oral decision . . . the

hearing on the judgment of dissolution, as well as the March 27, 2009 hearing on the motion to enjoin. Based on our review of the unsigned transcripts, we are able to locate the portions of the record that constitute the court's orders. Thus, the defendant's failure to comply with the requirements of Practice Book § 64-1 does not hamper our ability to review her claim. See, e.g., *State* v. *Payne*, 121 Conn. App. 308, 312, 996 A.2d 302, cert. denied, 297 Conn. 919, 996 A.2d 1193 (2010).

Turning to the merits of the defendant's first claim, we conclude that the court's March 27, 2009 order constituted an improper postjudgment modification of the court's property assignment pursuant to the May 21, 2008 judgment of dissolution. "[C]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage." (Internal quotation marks omitted.) *Roos* v. *Roos*, 84 Conn. App. 415, 422, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004). General Statutes § 46b-86 (a)[3] "deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under . . . § 46b-81." *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980). "A court, therefore, does not have the authority to modify the

appellant may file with the appellate clerk a notice that the decision has not been filed in compliance with subsection (a). . . ."

[3] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . [any] order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court . . . . This section shall not apply to [property] assignments under section 46b-81 . . . ."

division of property once the dissolution becomes final. . . . Although the court does not have the authority to modify a property assignment, a court . . . does have the authority to issue postjudgment orders effectuating its judgment." (Citation omitted.) *Roos* v. *Roos*, supra, 422.

In order to resolve the defendant's claim, we must therefore determine whether the court's March 27, 2009 order regarding the QDRO modified or merely effectuated the property distribution provided by the May 21, 2008 judgment of dissolution.[4] "A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . [W]hen determining whether the new order is a modification, we examine the practical effect of the ruling on the original order." (Citation omitted; internal quotation marks omitted.) *Santoro* v. *Santoro*, 70 Conn. App. 212, 217, 797 A.2d 592 (2002).

In order to determine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order. "[T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making . . . . Effect must be

---

[4] The parties do not contest the fact that the pension plan assigned pursuant to the QDRO was property to which § 46b-81 applies. See, e.g., *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 331, 983 A.2d 293 (2009) ("[o]ur Supreme Court has held that property as used in § 46b-81, includes the right, contractual in nature, to receive vested pension benefits in the future" [internal quotation marks omitted]).

given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *State* v. *Denya,* 294 Conn. 516, 529, 986 A.2d 260 (2010).

In the present case, there is no written order or judgment, and we must construe the court's oral order and judgment as memorialized in the unsigned transcripts. At the dissolution hearing, after assigning the QDRO to the plaintiff, the court stated: "It is the court's finding that between both of the parties it is understood that there should be, absent fluctuations, approximately $734,000 in [the] QDRO." We construe the terms "absent fluctuations" and "approximately" as indicating that the court was not awarding the plaintiff a sum certain of $734,000. Rather, this language plainly indicates that the court was awarding the plaintiff the QDRO, with whatever amount it may contain, and not a fixed sum. The statement regarding the $734,000 merely reflects the court's understanding of the amount that the QDRO contained at that time, and when read in context, does not indicate that the court was awarding the plaintiff that exact sum. At the conclusion of the March 27, 2009 hearing on the motion to enjoin, however, the court ordered that the plaintiff was to receive a sum certain of $734,000 and that after the defendant transferred the QDRO, any deficiency between the amount in the QDRO and the sum of $734,000 should be paid by the defendant through the sale of assets. Therefore, by ordering that the defendant sell assets to pay any deficiency between the amount in the QDRO and the sum of $734,000, the second order had the practical effect of altering the original property distribution from an award of the QDRO to an award of a fixed sum to be paid out of the funds in the QDRO as well as the sale of assets.

We conclude that the court's March 27, 2009 order went beyond merely effectuating the original distribution of the marital property and instead altered the

terms of the original order. To the extent that the court's March 27, 2009 order altered the terms of the original May 21, 2008 judgment, it constituted an improper post-judgment modification of the original distribution of the marital property and, thus, cannot stand.

The judgment is reversed only as to that portion of the court's order that the plaintiff is entitled to a sum certain of $734,000 and that the defendant pay any deficiency between the amount in the QDRO and the amount of $734,000. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.