******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KARIN LAWRENCE *v.* MANUEL CORDS
(AC 36589)

Lavine, Sheldon and Keller, Js.

*Argued May 13—officially released August 11, 2015*

(Appeal from Superior Court, judicial district of
Litchfield, Gallagher, J.)

*Gregory T. Nolan*, with whom, on the brief, was *Patsy
M. Renzullo*, for the appellant (defendant).

*Mark H. Swerdloff*, with whom, on the brief, was
*Ileen P. Swerdloff*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The defendant, Manuel Cords, appeals from the postdissolution judgment of the trial court finding him in contempt for failing to comply with certain court orders regarding the parties' real property. The defendant claims that the court erred in granting the motion for contempt filed by the plaintiff, his former wife, Karin Lawrence, in that (1) in so doing, it impermissibly modified the property distribution ordered at the time of dissolution, and (2) it improperly determined that he wilfully violated the court's orders. We disagree with the defendant's contention that the court improperly modified the property distribution ordered in the dissolution judgment, concluding instead that the court properly clarified its orders regarding the parties' real property. We further conclude that the orders issued at the time of the dissolution judgment were not so clear as to support a finding that the defendant wilfully failed to comply with them. We therefore reverse the trial court's judgment of contempt, but affirm the judgment in all other respects.

The marriage of the parties was dissolved on November 19, 2013. Pursuant to that judgment, the court, *Gallagher*, *J.*, issued various orders regarding the parties' marital property. With respect to their real property, the court ordered, inter alia:

"7. Upon payment of $246,000 by the defendant to the plaintiff as set forth herein, the plaintiff shall quitclaim all her right, title and interest in 61 Colebrook Road to the defendant. The defendant shall hold the plaintiff harmless on all notes and mortgages regarding the Colebrook properties. . . .

"8. The defendant shall pay to the plaintiff the sum of $246,000 within 60 days of notice of this decision. Should the defendant fail to pay the sum of $246,000 to the plaintiff in the time period allotted, the defendant shall take whatever steps necessary to remove the cloud on the title he caused to be placed in the name of Sibling Associates, and the parties shall immediately thereafter cause 61 Phelps Road to be placed on the market. The sales price will be determined by the real estate broker. Upon sale of the subject property, the proceeds shall be paid out as follows: payment in full of the Webster Bank mortgage; $246,000 plus interest on said sum at the legal rate to the plaintiff; remainder to the defendant. Said interest begins running sixty days from the date of this decision."[1]

On January 27, 2014, the plaintiff filed a motion for contempt on the ground that the defendant had failed to comply with the above-referenced orders of the court. Specifically, she alleged that more than sixty days had passed since the date of the dissolution judgment, but that the defendant had not paid her the ordered sum of $246,000, nor had the defendant taken any steps to

list the subject property for sale. She claimed that the defendant failed to hold her harmless for the mortgage on the property and that she had paid it for the months of December, 2013, and January, 2014. She thus asked the court to find the defendant in contempt, "together with appropriate orders, including a reasonable attorney fee necessitated by the requirement that she file this motion."

The court, *Gallagher, J.*, held a hearing on the plaintiff's motion for contempt on February 10, 2014, at which both parties testified. Following that testimony and oral argument by attorneys for both parties, the court ruled from the bench, finding the defendant in contempt because he did not pay the mortgage on the property or put the house on the market. The court explained: "[H]e is responsible to pay the mortgage. In other words, when I said she's not responsible to make these payments, he's responsible to make the payments." The court further found that the defendant has assets and thus the ability to make the payments. The court ordered that the house be put on the market within seven days and that the defendant pay the property taxes on the property. The court held: "Now, he has assets to pay her; he can either do that or he—he can do one of two things in seven days. He can either pay her the $246,000 plus the money that he owes on the mortgage payments that she made or he can start paying—he can put it on the market within seven days, and he can also pay the taxes that are owed and pay the monthly payments on the mortgage." The court also ordered the defendant to pay attorney's fees in the amount of $800 for the plaintiff's attorney. This appeal followed.

I

The defendant first claims that, in granting the plaintiff's motion for contempt, the trial court impermissibly modified the property distribution set forth in the dissolution judgment. We disagree.

It is well settled that "[a] court . . . does not have the authority to modify the division of property once the dissolution becomes final." (Internal quotation marks omitted.) *Stechel* v. *Foster*, 125 Conn. App. 441, 446–47, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011). "[C]ourts have continuing jurisdiction [however] to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . When an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events, therefore, a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . . In cases in which execution of the original judgment occurs over a period of [time], a motion for clarification is an appropriate

procedural vehicle to ensure that the original judgment is properly effectuated. . . .

"Although a trial court may interpret an ambiguous judgment, this court has emphasized that a motion for clarification may not . . . be used to modify or to alter the substantive terms of a prior judgment . . . and we look to the substance of the relief sought by the motion rather than the form to determine whether a motion is properly characterized as one seeking a clarification or a modification. . . .

"In order to determine whether the trial court properly clarified ambiguity in the judgment or impermissibly modified or altered the substantive terms of the judgment, we must first construe the trial court's judgment. It is well established that the construction of a judgment presents a question of law over which we exercise plenary review. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . In addition . . . because the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order. . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Citations omitted; internal quotation marks omitted.) *Bauer* v. *Bauer*, 308 Conn. 124, 130–32, 60 A.3d 950 (2013).

Although paragraphs 7 and 8 of the dissolution judgment, as quoted previously, do not explicitly require the defendant to pay the mortgage on the subject property, those provisions must be construed in a manner consistent with the dissolution judgment as a whole. Paragraph 11 of the dissolution judgment provides: "All debts on the plaintiff's financial affidavit, excluding the Webster Bank mortgage, are to be paid by the plaintiff, and she shall hold the defendant harmless thereon." Because the court absolved the plaintiff from paying the mortgage at issue, it is implied that the defendant would be responsible for paying it going forward. Indeed, during the contempt hearing, the court repeatedly indicated that that had been its intention.[2] Thus, read in its entirety, the dissolution judgment places on the defendant the responsibility to pay the monthly mortgage on the former marital home until he either bought out the plaintiff's interest by paying her

$246,000, or sold it. The trial court's clarification of its own previous order in this regard cannot be construed as manifestly unreasonable. Moreover, in looking to the substance of the relief sought by the plaintiff's motion, it clearly sought enforcement of the judgment, not modification, or even clarification. We thus conclude that the trial court's order did not alter the substantive terms of the judgment and, therefore, did not constitute an improper modification of the judgment.

## II

The defendant also claims that the court improperly found him in contempt. Specifically, he claims that because the dissolution judgment did not clearly require him to pay the mortgage on the property until he either bought out the plaintiff's interest or sold the property, his failure to comply with these orders could not have been wilful so as to provide a proper basis for the court's finding of contempt. He also claims that the court's determination that he wilfully violated its order to list the property within sixty days of the date of dissolution was improper because the burden to list the property, pursuant to the dissolution judgment, was not his alone, but was the responsibility of both parties. We agree with both of the defendant's claims.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

"Civil contempt is committed when a person violates an order of court which requires that person in *specific and definite language* to do or refrain from doing an act or series of acts. . . . A sufficiently clear and unambiguous [order] is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded *solely* upon some clear and express direction of the court. . . . It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order. . . . [W]here parties under a mandatory judgment could be

subjected to punishment as contemnors for violating its provisions, such punishment should not rest upon implication or conjecture, but the language declaring such rights should be clear, or imposing burdens specific and unequivocal so that the parties may not be misled thereby." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 382, 107 A.3d 920 (2015).

A

The defendant claims that because the dissolution judgment did not clearly require him to pay the mortgage on the parties' property, his failure to do so could not have been construed as wilful noncompliance, as required for the entry of a judgment of contempt. He argues that he believed that the hold harmless language contained in paragraph 7 of the dissolution judgment applied in the event that he purchased the plaintiff's interest in the property. Although we agree with the defendant that the dissolution judgment did not explicitly require him to pay the mortgage, it did, when read in its entirety, imply that he was required to pay it. As previously noted, however, a finding of contempt, cannot " 'rest upon implication' . . . ." Id. Because the order was not clear, we must conclude that the defendant's failure to comply with it could not have been wilful and, thus, that the court's finding of contempt on that basis was improper.

B

The defendant also challenges the court's finding of contempt that was based on his alleged failure to list the house for sale. In that regard, the court found: "[The defendant] is in contempt . . . because he did have the option of putting the house on the market, but he didn't do that within the time period he was told. He didn't move fast, and he's dillying and dallying with that." The dissolution judgment provided that, if the defendant opts not to buy out the plaintiff within sixty days of the date of judgment, "*the parties* shall . . . cause 61 Phelps Road to be placed on the market." (Emphasis added.) Because the dissolution judgment placed the burden to list the property on both parties, the court improperly found the defendant in contempt for failing to list the property himself.

The judgment is reversed only as to the finding of contempt and the case is remanded with direction to deny the contempt motion and to vacate the award of attorney's fees. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] It is evident from the dissolution judgment that the trial court's use of the term "Colebrook Properties" is a reference to the marital home at 61 Phelps Road, including the ten acre plot of land on which that home is located, as well as additional land "in the immediate vicinity of 61 Phelps Road" purchased during the course of the marriage.

In his brief to this court, the defendant represents: "It should be noted

that, in the Superior Court's orders of November 19, 2013, there is no mention of *61 Phelps Road* in any of the property considered by the Superior Court; the only mention was of *61 Colebrook Road* in the orders at the end of the memorandum of decision." (Emphasis in original.) In fact, the trial court references 61 Phelps Road five times in its memorandum of decision.

[2] During the contempt hearing, the court remarked, inter alia, "I think it's pretty clear that he was supposed to be paying the—the mortgage payments." Later in the hearing, the court explained, "[I]t's in the—it is what is in the judgment is that she's ordered to pay the expenses on her financial affidavit with the exception of the mortgage. That's part of the judgment." The court reiterated, "I know what I wrote. She wasn't to pay the mortgage; he was to pay the mortgage."

———————————————————