******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT SCHNEIDER *v.* LYNN SCHNEIDER
(AC 36423)

Gruendel, Prescott and Bishop, Js.

*Argued March 5—officially released November 3, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, S. Richards, J.)

*Norman A. Roberts*, *II*, with whom, on the brief, was
*Tara C. Dugo*, for the appellant (plaintiff).

*George J. Markley*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Robert Schneider, appeals from the judgment of the trial court denying his motion for an order that the defendant, Lynn Schneider, reimburse him for mortgage payments he made after she had failed to make payment as required by the original judgment dissolving the parties' marriage. The plaintiff asserts that the unambiguous language of the parties' separation agreement required the defendant to make all payments after a certain date and that, after her failure to do so, his payments in place of her obligation were reimbursable. The plaintiff claims on appeal that the court abused its discretion when it denied his request for reimbursement. We agree and conclude that the court's denial constituted an improper modification of the property distribution order. Accordingly, we reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The parties were married for twenty-three years and had one child born of the marriage. The marriage was dissolved on January 3, 2007. Incorporated into the dissolution judgment was a separation agreement, entered into by the parties and approved by the court. Under the plain terms of the agreement, the plaintiff would reside in the marital home and the defendant, in lieu of child support, would be responsible for one half of the home's holding costs[1] until the occurrence of one of two events: (1) the home's sale, or (2) the plaintiff's first court-ordered payment of $10,050 toward their child's college expenses. Once either event occurred, the defendant would become fully responsible for paying the holding costs until the home was sold.[2]

For two and one-half years after the dissolution, the parties adhered to the provisions of the agreement and equally split the holding costs. They listed the house for sale in April, 2009. On July 1, 2009, the plaintiff made his first payment toward their child's college tuition. This event triggered paragraph 3.C of the separation agreement, ending the plaintiff's duty to contribute to the holding costs. Nevertheless, the plaintiff and the defendant each continued to pay one half of the mortgage payments for another two and one-half years until the home's eventual sale on February 8, 2012. As a result, the plaintiff paid an additional $51,331.96 beyond what the dissolution judgment required. The defendant concedes that, during this time, she did not pay the entirety of the holding costs and that the plaintiff continued to contribute toward one half of the payments due.[3]

Although it is undisputed that the defendant failed to pay the entirety of the holding costs as obligated by the agreement, the parties dispute the characterization of the plaintiff's payments. The plaintiff, in his initial motion seeking reimbursement, characterized his pay-

ments as a loan, which he provided in order to avoid foreclosure of the property. He testified that he and the defendant had reached an informal agreement whereby the defendant would repay him when the property was sold. On appeal, the defendant characterizes the plaintiff's payments as voluntary, and, as a result, she argues that she is under no legal obligation to repay him. In addition, she asserts that the agreement required her to pay the bank, not repay the plaintiff when he paid the bank her share, and, therefore, the court lacked authority to order her to repay the plaintiff.

In its memorandum of decision, the court found that "despite having no legal obligation to do so after [July 1, 2009], the plaintiff continued to make said payments on the property from July, 2009 through January, 2012." The court, however, denied the plaintiff's motion on the basis that it did not find the plaintiff's testimony credible, that the defendant never testified whether there was an informal agreement, and that as a result, the plaintiff had failed to meet his burden of proof.[4] Subsequently, the court denied the plaintiff's motion to reargue, and this appeal followed.

On appeal, the plaintiff argues that the separation agreement unambiguously required the defendant to repay him the $51,331.96. He therefore maintains that by denying the motion for order, the court impermissibly modified the dissolution judgment and consequently abused its discretion. We agree.

We begin by setting forth the standard governing our review of the court's denial of the plaintiff's motion for order. "[C]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . . Although the court does not have the authority to *modify* a property assignment, a court . . . does have the authority to issue postjudgment orders *effectuating* its judgment." (Citations omitted; emphasis added; internal quotation marks omitted.) *Stechel* v. *Foster*, 125 Conn. App. 441, 446–47, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011).

"A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . [W]hen determining whether the new order is a modification, we examine the practical effect of the ruling on the original order." (Citation omitted; internal quotation

marks omitted.) *Santoro* v. *Santoro*, 70 Conn. App. 212, 217, 797 A.2d 592 (2002).

"In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) *Perry* v. *Perry*, 156 Conn. App. 587, 595, 113 A.3d 132 (2015). "[W]e have recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 138 Conn. App. 63, 76, 50 A.3d 372 (2012).

"In order to determine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order. [T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Stechel* v. *Foster*, supra, 125 Conn. App. 447–48.

In the present case, it is undisputed that the separation agreement ordered the defendant to pay 100 percent of the holding costs, including the mortgage payments, from July 1, 2009, until the property was sold on February 8, 2012. Specifically, paragraph 3.C of the separation agreement states that the defendant "shall be responsible for . . . the *full* amount of said payments" after the plaintiff's first tuition payment on July 1, 2009. (Emphasis added.) Accordingly, when the defendant failed to make payment, she violated the court's order. See *Culver* v. *Culver*, 127 Conn. App. 236, 242, 17 A.3d 1048, cert. denied, 301 Conn. 929, 23 A.3d 724 (2011) ("general rule is that a court order must be followed until it has been modified or successfully challenged" [internal quotation marks omitted]).

Furthermore, the agreement provided that, upon the sale of the property, the net proceeds would be distributed accordingly: (1) the plaintiff would receive the first $300,000, (2) the defendant would receive the next $700,000, and (4) any remaining proceeds would be split evenly between the parties. When the home was sold, the net proceeds amounted to less than $1 million, with the plaintiff receiving $300,000 and the defendant receiving the balance of $481,074.[5] From July 1, 2009, when the plaintiff's obligation to pay terminated, until

the February, 2012, when the property was sold, the plaintiff made additional payments totaling $51,331.96 in satisfaction of the defendant's obligation. The plaintiff requested reimbursement of that amount, which was denied by the court. The court's denial, when considered together with the distribution of the proceeds from the sale of the home, resulted in a windfall to the defendant, who was able to avoid paying one half of the holding costs for several years while still receiving the benefit of those payments when she received the sale proceeds. See *Clark* v. *Clark*, 150 Conn. App. 551, 572, 91 A.3d 944 (2014) ("[o]n review, we look to the substance of the relief sought by the motion and the practical effect of the trial court's responsive ruling" [internal quotation marks omitted]).

We conclude that the practical result of the court's determination was an additional transfer of property from the plaintiff to the defendant, and, as a result, it constituted an improper modification of the original judgment. Stated differently, in light of the postjudgment actions of the parties, it was necessary to reimburse the plaintiff in order to effectuate and preserve the original judgment. "It is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Clement* v. *Clement*, 34 Conn. App. 641, 646, 643 A.2d 874 (1994). In *Clement*, the plaintiff was required under the dissolution judgment to pay the mortgage on the defendant's home. Id., 643. When he failed to do so, the home was foreclosed upon and the mortgage was extinguished. Id. In order to effectuate the original judgment, the court ordered the plaintiff to pay the defendant $29,500. Id., 644. In affirming judgment, this court concluded that in order to "preserve the original judgment's integrity, the trial court required the plaintiff to pay the defendant the value of the loss caused by the plaintiff's failure to comply with its judgment." Id., 646. Similar to *Clement*, the plaintiff in the present case sought the value of the loss caused by the defendant's failure to comply with her obligations under the dissolution judgment. Such a determination is within the equitable powers of the court, which is to be given broad deference on review; reversal is appropriate, however, when "it appears that the trial court's decision is unreasonable or creates an injustice." (Internal quotation marks omitted.) *Croall* v. *Kohler*, 106 Conn. App. 788, 791, 943 A.2d 1112 (2008). Accordingly, we conclude that the court's denial of the plaintiff's motion for order was unreasonable and, therefore, an abuse of its discretion.

Moreover, we reject the defendant's claim that the plaintiff could only seek the relief sought by filing a motion for contempt. "[T]he trial court's continuing jurisdiction to effectuate its prior judgments . . . is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt

. . . ." (Internal quotation marks omitted.) *Rozbicki* v. *Gisselbrecht*, 152 Conn. App. 840, 847, 100 A.3d 909 (2014). "[E]ven in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." *Nelson* v. *Nelson*, 13 Conn. App. 355, 367, 536 A.2d 985 (1988). The court retains the power to ensure compliance with the original judgment and can fashion orders to preserve the integrity of that judgment.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The holding costs comprised mortgage payments, real estate taxes, and homeowner's insurance.

[2] Paragraph 3.C of the separation agreement provides: "In lieu of child support paid from the Husband to the Wife, the Husband shall pay one half of the current mortgage, one half of the real estate taxes, and one half of the homeowner's insurance until the former marital residence located at 160 Olmstead Hill Road, Wilton, CT is sold as set forth in this Agreement at Article V, or until the Husband begins making payments pursuant to Article 4 hereof [concerning college expenses], whichever first occurs. The Wife shall be responsible for the other one half of the payments of said items, and the full amount of said payments once the Husband's obligation for one half of those payments terminates. If during the time the Husband is responsible for one half of the mortgage, real estate taxes, and homeowner's insurance payments, the Wife is unable to pay her one half of said payments, the Husband shall, to the extent he is financially able, pay the Wife's one half as a loan to her. The Wife shall repay the Husband as soon as she is financially able, and in no event later than when the marital residence is sold or the Husband's interest therein is purchased by the Wife."

[3] The following colloquy occurred during argument on the motion for order:

"[The Plaintiff's Counsel]: So, Mrs. Schneider, effectively beginning July 1, 2009, [the plaintiff] was no longer required to pay . . . half of the mortgage, correct?

[The Defendant]: He was no longer required, no.

"[The Plaintiff's Counsel]: And after that date did he continue paying?

"[The Defendant]: Yes."

[4] The court found that the plaintiff made the payments without any obligation to do so. The court, however, found not credible the plaintiff's testimony regarding an informal agreement between the parties that the payments would serve as a loan to the defendant and would be paid back when the house was sold. Although " '[w]e do not retry the facts or evaluate the credibility of witnesses' "; *Brown* v. *Brown*, 148 Conn. App. 13, 20, 84 A.3d 905, cert. denied, 311 Conn. 933, 88 A.3d 549 (2014); it is irrelevant to our decision whether an informal agreement existed between the parties. What is relevant is that the defendant failed to meet her obligation under the dissolution judgment, that the plaintiff was burdened with an additional obligation, and that, absent an order by the court, the spirit of the original dissolution judgment could not be preserved.

[5] A balance of $7100.54 was held in escrow.