******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# COLLEEN POWERS *v.* KAVEESH HIRANANDANI
## (AC 40470)

Lavine, Keller and Devlin, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff and issuing certain orders. Prior to the parties' marriage, the defendant and his brother, M, purchased two pieces of real property together, property L and property B. The defendant owned 99 percent of property L and one percent of property B, whereas M owned 1 percent of property L and 99 percent of property B. Property L was the marital home of the defendant and the plaintiff. M died in April, 2014 and, in his will, M devised his interest in both pieces of real property to the defendant. During the dissolution proceedings, the trial court ordered the defendant to transfer his rights, title, and interest in property L to the plaintiff and to retain ownership of property B, free and clear of any claim by the plaintiff. On appeal, the defendant raised several claims regarding the trial court's orders concerning certain real property and its financial orders. *Held*:

1. The trial court did not lack subject matter jurisdiction over the real property awarded as part of the parties' marital estate; the trial court has plenary and general subject matter jurisdiction over legal disputes in family relations matter pursuant to statute (§ 46b-1 (c)) and has authority to transfer property germane to a dissolution proceeding pursuant to statute (§ 46b-81), including title to real property; moreover, to the extent that the defendant's argument is construed as a challenge to the trial court's authority to order the defendant to transfer his rights, title, and interest in property L to the plaintiff, the court did not lack the authority to do so; the court is required by § 46b-81 to divide the marital assets of the parties at the time of dissolution and, therefore, properly ordered the defendant to transfer his rights, title, and interest in property L, which was listed on his financial affidavit, indicating it was part of the marital property to be divided.

2. The defendant could not prevail on his claim that the trial court's orders regarding the distribution of real property were predicated on a mistake and are impossible to execute; M devised his interest in property B to the defendant in his will and, on his death, the defendant became the sole owner of property B and it was irrelevant that M's estate had not been settled at the time of dissolution and that the defendant was not in possession of the property, as the defendant conflated ownership and possession, and, therefore, it was not clearly erroneous for the trial court to find that the defendant was the sole owner of property B.

3. The trial court did not abuse its discretion in ordering the defendant to pay 53 percent of the cost of the child's extracurricular activities; although the court set no upper limit as to that cost, at the time of the dissolution, the cost of extracurricular activities as listed on the plaintiff's financial affidavit was de minimus and the defendant failed to establish that the court's order constituted an abuse of discretion; moreover, if there is a substantial change in circumstances, the defendant has a remedy pursuant to statute (§ 46b-56) to seek a modification of the court's order.

4. The trial court did not abuse its discretion in distributing the real property between the parties without determining the value of that property; the defendant failed to provide evidence as to the value of property B, listing the estimating value of property B as "unknown" on one financial affidavit and, in a second financial affidavit, providing the value of property B as of the date of M's death, whereas the relevant value in a dissolution action is the value as of the date of dissolution.

5. The trial court abused its discretion in failing to divide the parties' personal property listed on their financial affidavits and ordering them to divide the property to their mutual satisfaction; nevertheless, this court concluded that reconsideration of the court's order as to the division of the parties' personal property did not merit reconsideration of all of the court's financial orders as the few items of personal property are clearly

severable from the overall mosaic that was the court's financial orders.

6. The trial court did not abuse its discretion in ordering the defendant to pay the mortgage and other costs for property L until he transferred his rights, title, and interest to the plaintiff; the court's order required the defendant to pay the mortgage and costs for less than one month and, if he could not afford to do so, he could have transferred his interest in property L to the plaintiff immediately following the dissolution rather than wait until the end date set by the court.

Argued December 10, 2019—officially released May 26, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Jacobs, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Samuel V. Schoonmaker*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellant (defendant).

*Tara C. Dugo*, with whom were *Haseeb Khan* and, on the brief, *Norman A. Roberts*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant, Kaveesh Hiranandani, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Colleen Powers. On appeal, the defendant claims that the court (1) lacked subject matter jurisdiction over the real property it awarded to the plaintiff, (2) issued orders with respect to real property that were predicated on a mistake and are impossible to execute, (3) abused its discretion by dividing the real property between the parties without determining its value, (4) abused its discretion by failing to divide the parties' personal property, (5) improperly ordered him to pay a percentage of the cost of all future extracurricular activities of the parties' child, and (6) abused its discretion by issuing financial orders in excess of his ability to pay. We agree with the defendant's fourth claim, but disagree with the remainder of his claims. We, therefore, reverse in part the judgment of the trial court and remand the case for further proceedings.

The Gordian knot at the heart of this appeal centers on the real property that the defendant inherited from his deceased brother, Monesh Hiranandani (Monesh). The facts regarding the property may be summarized as follows. In 2003, the defendant and Monesh together purchased and mortgaged residential properties in Stamford known as 63 Lantern Circle (Lantern Circle) and 17 Bend of River Lane (Bend of River). The defendant resided at Lantern Circle, which later became the parties' marital home. Monesh resided at Bend of River, which was his marital home. The defendant owned 99 percent of his Lantern Circle residence and Monesh owned 1 percent of it. Monesh owned 99 percent of his Bend of River residence and the defendant owned 1 percent of it. Monesh and his wife became estranged and, on October 17, 2013, Monesh executed a will (2013 will) in which he devised his interest in both Lantern Circle and Bend of River to the defendant. Monesh died in April, 2014. His widow contested the 2013 will in the Probate Court. The plaintiff commenced the present dissolution action on November 12, 2014. Following a protracted trial,[1] the court dissolved the parties' marriage on August 5, 2016, and ordered the defendant to transfer all of his rights, title and interest in Lantern Circle to the plaintiff by September 1, 2016. At the time of dissolution, the widow had withdrawn her challenge to the 2013 will, but Monesh's estate was insolvent and had not yet been settled. Although the defendant had inherited real property from Monesh, including Monesh's 1 percent interest in Lantern Circle, the Probate Court had not yet ordered the distribution of the property in the estate. The defendant's inheritance, therefore, had not yet come into his possession at the time of dissolution.

The trial court issued a memorandum of decision on

August 5, 2016, in which it made the following relevant factual findings.[2] The parties were married in March, 2010, and resided at Lantern Circle. Their only child was born in August, 2013. The plaintiff is a college graduate, who, at the time of the marriage, was employed full-time at an annual salary of approximately $150,000. After the birth of the parties' child, the plaintiff worked part-time, but she has not been employed since December, 2013. At the time of trial, the forty-three year old plaintiff resided with the parties' child at Lantern Circle.

The defendant, who was forty-five at the time of trial, suffers from a medical condition that has caused a discrepancy in the length of his legs and causes soreness in his joints. He has a degree in economics and was self-employed as a consultant, earning between $70,000 and $80,000 per year until the end of 2012, when he left his employment to help care for Monesh, who had been diagnosed with cancer. The defendant attributed his extended unemployment to his time spent taking care of Monesh, grieving Monseh's death and the parties' marital separation, and the demands of the court process. He was living in an apartment in Stamford at the time of trial.

The court found that the parties' marriage was deeply troubled. The parties did not know basic things about one another, including their health, education, and financial affairs. Because they did not communicate, the plaintiff did not know that the defendant had failed to file income tax returns for a number of years and he did not know that the plaintiff had filed separate income tax returns.

Each of the parties testified as to what he or she considered to be the other party's disturbing conduct. The defendant testified that the plaintiff continued to wear an engagement ring given to her by her former fiancé who died unexpectedly and used a greeting that the fiancé had recorded on the parties' landline. According to the defendant, the plaintiff did not set up a nursery for their child and twice had signed a lease for an apartment to move out of Lantern Circle with the child.

The plaintiff testified that she lived in fear of the defendant. She did not set up the child's nursery because she was afraid of the defendant's verbal abuse if she touched his belongings in the room. She twice signed a lease for an apartment intending to leave the marriage, only to return. The plaintiff presented evidence that the defendant was verbally abusive toward her, including three audiotapes on which the defendant could be heard making vicious, vituperative, and obscene comments about the plaintiff. The plaintiff produced photographs depicting damage the defendant had caused to the walls of Lantern Circle. The defendant acknowledged his voice on the audiotapes and admitted

that he had damaged the walls of Lantern Circle. According to the defendant, he was in a period of personal crisis when the tapes were recorded and he caused the wall damage, but he could not remember the incidents. The court found that the plaintiff testified credibly about the defendant's verbal abuse and that the defendant was more responsible than the plaintiff for the breakdown of the marriage.[3]

With respect to the parties' assets, the court made the following findings. The defendant owned 99 percent and Monesh owned 1 percent of Lantern Circle. When Monesh died in 2014, he devised his 1 percent interest in Lantern Circle to the defendant. The parties stipulated that the fair market value of Lantern Circle was $510,000. The defendant's April 11, 2016 financial affidavit stated that Lantern Circle was encumbered by a $367,921 mortgage, leaving a net equity of $142,079. Although the plaintiff and the parties' child resided at Lantern Circle, the defendant continued to pay the mortgage and bills with funds he had borrowed from his mother, Mohini Hiranandani (Mohini). In addition, the court found that Monesh also had devised his 99 percent interest in Bend of River to the defendant. In his April 11, 2016 financial affidavit, the defendant listed Bend of River as an asset and valued it at $767,656.89 as of the *date of Monesh's death in 2014*. The affidavit stated that Bend of River was encumbered by a mortgage of $600,350.

The court dissolved the parties' marriage on the ground of irretrievable breakdown and found that it was in the child's best interest for the plaintiff to have sole legal custody and final decision-making authority in consultation with the defendant. The court issued extensive orders regarding the location of the child's residence vis-à-vis the defendant, visitation with the defendant, and the financial responsibilities of the parties with respect to the child.[4] Those child-related financial orders, except the order related to the child's extracurricular expenses, are not at issue in the present appeal.

With regard to the division of the marital assets, the court ordered the defendant to "transfer to the plaintiff all of his rights, title and interest in" Lantern Circle on or before September 1, 2016. Until he transfers Lantern Circle to the plaintiff, the defendant "shall be solely responsible for all future costs associated with said property including the mortgage(s), taxes, insurance, utilities, maintenance, and the like and shall indemnify and hold the plaintiff harmless therefrom. Upon such transfer, the plaintiff shall be solely responsible for all future costs associated with said property including the mortgage(s), taxes, insurance, utilities, maintenance, and the like and shall indemnify and hold the defendant harmless therefrom." The court ordered the defendant to retain ownership of Bend of River free and clear of

any claim by the plaintiff.

As to their personal property, the court ordered the plaintiff to retain her jewelry listed on her financial affidavit. The parties were to divide the home furnishings listed on the plaintiff's April 11, 2016 financial affidavit to their mutual satisfaction. The court also ordered the parties to retain their respective financial accounts and assume liability for their respective debts. See footnote 2 of this opinion.

On August 24, 2016, the defendant filed a motion for reargument or reconsideration, asking the court to value his interest in Bend of River and reconsider its order that he transfer his interest in Lantern Circle to the plaintiff, among other things. The court reconsidered its decision and modified its order only with respect to the defendant's request regarding Mother's Day visitation. The defendant appealed.

On December 15, 2017, the defendant filed a motion for articulation stating that the court "did not find that [he] owns" Lantern Circle and Bend of River or that "he would solely own" Lantern Circle as of September 1, 2016. He also stated that the court did not value his interest in Bend of River. He, therefore, asked the court to articulate whether it found that he owned 100 percent of Lantern Circle on the date of dissolution, whether he could transfer his entire interest in Lantern Circle to the plaintiff on or before September 1, 2016, the basis of its order regarding postjudgment expenses for Lantern Circle, and whether he owned 100 percent of Bend of River on the date of dissolution. He also asked the court to state the factual and legal basis of its determinations. In addition, the defendant asked the court to articulate whether it had determined the dollar value of his interest in Bend of River and the basis for that determination, whether it divided responsibility for the mortgage on Lantern Circle twice, and whether it had denied his motion regarding payment of fixed expenses for Lantern Circle.

The court articulated its decision on May 1, 2018, stating that the defendant inherited Monesh's 1 percent interest in Lantern Circle on the date of Monesh's death. It ordered the defendant to transfer his *ownership interest* in Lantern Circle to the plaintiff on or before September 1, 2016, pursuant to his testimony regarding his inheritance from Monesh and that the will contest had been resolved. The court ordered the defendant to pay all future costs, including the mortgage associated with Lantern Circle from the date of dissolution to the date of transfer on the basis of his testimony and financial disclosure that he had continued to pay those costs to the date of dissolution. The court ordered that the plaintiff be responsible for future costs, including the mortgage, associated with Lantern Circle after ownership was transferred to her.

The court also articulated that the defendant inherited Monesh's 99 percent interest in Bend of River on the date of his death. At the time of Monesh's death, Bend of River was valued at $767,656.89 and was encumbered by a mortgage of $600,350. The court's determinations were predicated on the defendant's testimony that the will contest brought by Monesh's widow had been resolved and the values listed on the defendant's financial affidavits. The articulation, however, failed to value the defendant's interest in Bend of River on the date of dissolution. The defendant filed a motion for review with this court.

This court granted the defendant's motion for review and ordered the trial court to "articulate whether it determined the dollar value of the [defendant's] interest in [Bend of River], and, if so, to identify that dollar value, as well as the factors that it took into consideration when making its determination as to that dollar value, including whether it considered the [defendant's] claim that the value of his interest in [Bend of River] would be impacted by the insolvency of [Monesh's] estate and the need to sell that property in order to pay for the estate's debts and administrative expenses."

In response to this court's articulation order, the trial court stated that neither party provided the court with expert testimony regarding the value of Bend of River. As a result, the court relied on the testimony of the parties and their financial affidavits to establish the value of Bend of River. The court found the market value of Bend of River to be $767,656.89. The defendant inherited the property from Monesh, making him the sole owner of Bend of River. In making its findings, the court considered the defendant's testimony, his financial affidavits, the testimony of Attorney John Vecchiolla, the administrator of Monesh's estate, and the estate inventory. The court did not assign a specific value to the defendant's interest in Bend of River. In reaching its conclusions in distributing the marital property, the court stated that it had considered the testimony of the parties and the witnesses, including the defendant's claim that the value of his interest in Bend of River would be affected by the insolvency of Monesh's estate and the need to sell that property to pay for the debts of the estate and administrative expenses. The court considered the financial resources available to the defendant, including the substantial support Mohini afforded him.[5] The defendant filed a motion for review of the court's second articulation. This court granted review but denied the relief requested. Additional facts will be set forth as needed.

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has

abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action . . . . Furthermore, [t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Oudheusden* v. *Oudheusden*, 190 Conn. App. 169, 177–78, 209 A.3d 1282, cert. granted on other grounds, 332 Conn. 911, 209 A.3d 1232 (2019).

## I

The defendant first claims that the trial court in this action for marital dissolution "lacked subject matter jurisdiction over the real property it awarded to the plaintiff."[6] Specifically, the defendant claims that the court lacked subject matter jurisdiction over the real property, but the issue, as it is briefed, is whether the court had authority at the time it dissolved the parties' marriage to order the defendant to transfer all his rights, title, and interest in Lantern Circle to the plaintiff on or before September 1, 2016, because Monesh's estate had not yet been settled and Lantern Circle was in the possession of the Probate Court. We disagree that the trial court lacked subject matter jurisdiction over the parties' marital estate, including Lantern Circle. Insofar as the defendant's argument can be construed as a challenge to the trial court's authority, we also disagree that the court lacked authority to order the defendant to transfer his rights, title, and interest in Lantern Circle to the plaintiff.

We begin with the well established standard of review regarding subject matter jurisdiction. "A determination regarding a trial court's subject matter jurisdiction is a question of law." (Internal quotation marks omitted.) *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 417, 797 A.2d 494 (2002). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second), Judgments § 11. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727, 724 A.2d 1084 (1999). "Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Step-*

*ney Pond Estates, Ltd.* v. *Monroe*, supra, 417.

### A

We first address the defendant's subject matter jurisdiction claim. "The question of whether the trial court had subject matter jurisdiction to hear this case can be raised at any time and must be answered before we can proceed to the issues originally raised on appeal." *O'Donnell* v. *Waterbury*, 111 Conn. App. 1, 4, 958 A.2d 163, cert. denied, 289 Conn. 959, 961 A.2d 422 (2008). See also *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 703, 894 A.2d 259 (2006) (jurisdictional question must be decided before court may decide case).

The action before the trial court was for the dissolution of the parties' marriage. "General Statutes § 46b-1 (c) provides the Superior Court with plenary and general subject matter jurisdiction over legal disputes in family relations matters." (Internal quotation marks omitted.) *Sachs* v. *Sachs*, 60 Conn. App. 337, 345–46, 759 A.2d 510 (2000). Section 46b-1 (c) provides in relevant part: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving: (1) Dissolution of marriage, contested and uncontested . . . ." When rendering a dissolution of marriage, the court may divide equitably the assets and property of the parties. It is settled law that "[c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. . . . [T]he court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage." (Internal quotation marks omitted.) *Schneider* v. *Schneider*, 161 Conn. App. 1, 5–6, 127 A.3d 298 (2015).

Section 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party . . . without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect." Moreover, General Statutes § 46b-66a (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may order the husband or wife to convey title to real property to the other party or to a third person."[7] "The purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her *equitable* share at the time of the dissolution." (Emphasis in original; internal quotation marks omitted.) *Falkenstein* v. *Falkenstein*, 84 Conn. App. 495, 501, 854 A.2d 749,

cert. denied, 271 Conn. 928, 859 A.2d 581 (2004). "The court may order that title to real property pass to either party or to a third party, or it may order the sale of the real property." Id., 502. "Generally, [this court] will not overturn a trial court's division of marital property unless it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 4, 977 A.2d 722 (2009). Pursuant to the statutes regarding the dissolution of marriage enacted by the legislature, we conclude that the trial court had subject matter jurisdiction over the division of the real property in the parties' marital estate.

B

The defendant also claims that the court improperly ordered him to transfer all of his rights, title, and interest in Lantern Circle to the plaintiff because the property was under the jurisdiction of the Probate Court and in the possession of the executor of Monesh's estate. In asserting this claim, the defendant overlooks the fact that he listed Lantern Circle on his financial affidavit dated April 11, 2016,[8] indicating that Lantern Circle was part of the marital property the court was to divide. He also testified that he inherited Monesh's 1 percent of Lantern Circle when Monesh died. The court articulated that, in dividing the marital estate, it relied on the defendant's testimony and financial affidavit.

We disagree with the defendant that the court improperly ordered him to transfer his rights, title, and interest in Lantern Circle to the plaintiff by September 1, 2016. He claims that he cannot comply with the court's order because Lantern Circle was "in the possession" of the Probate Court at the time of dissolution. The record discloses that the defendant has owned 99 percent of Lantern Circle since he and Monesh purchased the property in 2003. Monesh owned 1 percent of the property, which the defendant inherited when Monesh died. "[U]pon the death of an owner of real property, title to the decedent's property passes to his or her heirs." *Bender* v. *Bender*, 292 Conn. 696, 721, 975 A.2d 636 (2009). "[U]pon the death of the owner of real estate, neither the executor nor the administrator holds title. . . . Title immediately descends to the heirs or devisees of real estate, subject to the right of administration." (Internal quotation marks omitted.) *Stepney Pond Estates, Ltd.* v. *Monroe*, supra, 260 Conn. 433 n.28. The defendant, therefore, held title to his share and Monesh's share of Lantern Circle at the time of dissolution.

Although he testified at trial that he inherited Monesh's 1 percent interest in Lantern Circle, on appeal the defendant in this court argues that because Monesh's estate had not been settled at the time of dissolution, his inheritance had not yet been valued,

particularly his interest in Bend of River,[9] nor had it been distributed to him. He continues that settlement of the estate was complicated by the widow's will contest and the estate's insolvency. Due to the estate's insolvency, the defendant argues that the real property the defendant inherited from Monesh may need to be sold to pay estate debts and he may never come into possession of his 1 percent inherited interest in Lantern Circle. The status of Monesh's estate in the Probate Court is not before us. The question we must answer is whether, at the time it dissolved the parties' marriage, the court properly ordered the defendant to transfer his rights, title and interest in Lantern Circle to the plaintiff. We conclude that the court's order was proper.

"The scope of our review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Fox* v. *Fox*, 152 Conn. App. 611, 619, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014).

The division of marital property, as a general rule, may not be modified postdissolution judgment. "The court's authority to transfer property appurtenant to a dissolution proceeding rests on . . . § 46b-81. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . General Statutes § 46b-86 (a) deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under . . . § 46b-81. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final." (Citations omitted; internal quotation marks omitted.) *Stechel* v. *Foster*, 125 Conn. App. 441, 446–47, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011). Because the court was required by statute to divide the marital assets of the parties at the time of dissolution, it properly ordered the defendant to transfer *all of his rights, title, and interest in Lantern Circle,* nothing more,[10] to the plaintiff, irrespective of the status of Monesh's estate.

For the forgoing reason, we conclude that the court had the authority to order the defendant to transfer his rights, title and interest in Lantern Circle to the plaintiff by September 1, 2016,[11] and therefore did not abuse its discretion by doing so.

II

The defendant's second claim is that the court's orders regarding the distribution of real property were predicated on a mistake and are impossible to execute. More specifically, the defendant claims that the court erred in finding that he was the sole owner of Bend of River. We disagree.

We review the defendant's claim pursuant to the abuse of discretion standard. *Fox* v. *Fox*, supra, 152 Conn. App. 619. "[T]he court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage." (Internal quotation marks omitted.) *Stechel* v. *Foster*, supra, 125 Conn. App. 446.

The defendant claims that, in its memorandum of decision, the court improperly ordered him to retain ownership of Bend of River and, in its articulation, found him to be the sole owner of Bend of River. He argues on appeal that the court failed to acknowledge that he was not in possession of Bend of River and that he may never take full possession of the property if it is sold to pay the debts of Monesh's insolvent estate. The defendant further contends that the court treated Bend of River as if he owned 100 percent of it, rather than 1 percent with a vested, but not distributed, interest in the remaining 99 percent. He also claims that the court was mistaken to find that he was the sole owner of Bend of River. As he did with respect to his rights, title, and interest in Lantern Circle, the defendant has conflated ownership and possession. See part 1 of this opinion.

"In determining whether a trial court has abused its broad discretion in domestic relationship matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . ." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 155 Conn. App. 298, 301, 109 A.3d 546, cert. denied, 316 Conn. 912, 111 A.3d 886 (2015).

The facts in the record disclose that the defendant and Monesh purchased Bend of River together. Monesh had a 99 percent interest in the property and the defendant had a 1 percent interest therein. In his 2013 will, Monesh devised his interest in Bend of River to the defendant and, therefore, when he died in April, 2014, the defendant became the sole owner of Bend of River. See *Bender* v. *Bender*, supra, 292 Conn. 721 (upon death of owner of real property, title to decedent's property passes to heirs). It is of no consequence in the present

dissolution action that Monesh's estate had not been settled at the time of dissolution. The defendant was the owner of Bend of River. We therefore conclude that the court's finding that the defendant is the sole owner of Bend of River is not clearly erroneous, and the defendant's claim fails.

## III

The defendant also claims that the court abused its discretion by ordering him to pay a percentage of the child's extracurricular activities for which there was no evidentiary support. We disagree.

The following facts are relevant to this claim. The parties' child was born in August, 2013, and the court dissolved their marriage on August 5, 2016, when the child was three years old. In its memorandum of decision, the court stated in part with respect to its child support orders: "Consistent with the April 8, 2016 child support guidelines submitted by the defendant, the plaintiff shall pay [47] percent and the defendant shall pay [53] percent of the costs of all extracurricular expenses." The defendant argues on appeal that the order constitutes an abuse of the court's discretion because it does not contain an upper limit and there is no evidence of the child's extracurricular activities.

In her October 13, 2015 proposed orders, the plaintiff stated that the parties "shall equally share in the costs of extracurricular activities of the child. The term 'extracurricular activities' as used herein shall include, but not be limited to fees, equipment and supplies for: sports activities outside of school; art groups; theater groups; dance classes; Girl Scouts; music lessons, swim lessons, summer camps, and religious youth groups. The parties are to agree to these expenses in advance and in writing. If a party does not respond to a request within three (3) business days, the nonresponse shall be deemed acquiescence to the child participating and that party sharing in the cost. The parties shall keep each other apprised of an e-mail address where [he/she] can be reached." During trial, the defendant testified as to the activities in which the child participated: swimming, ice skating, and visits to the nature center activities in which he engaged the child for the child's growth and development. On her financial affidavit, the plaintiff listed the cost of the child's extracurricular activities as $1 per week. The defendant listed no expenses for the child's activities.

Although the defendant relies on *Ferraro* v. *Ferraro*, 168 Conn. App. 723, 147 A.3d 188 (2016), to support his claim, the facts of that case are distinguishable from the present case. In *Ferraro*, the court ordered the defendant father to pay for his children's extracurricular activities even though neither party had requested that the court enter such an order. Id., 726. In the present case, the plaintiff requested that the parties share

equally the cost of the child's extracurricular activities and that they consult with one another prior to enrolling the child in the enumerated activities consistent with the court's order regarding custody. She testified at trial that she would consult with the defendant but that she would make the final decision.

We acknowledge that the court set no upper limit as to the cost of the child's extracurricular activities, but the defendant has failed to establish that the court's order that he pay 53 percent of the cost of extracurricular costs at the time of dissolution constitutes an abuse of discretion. The court granted custody and final decision-making authority to the plaintiff, who is to consult with the defendant regarding the child's health, welfare, maintenance, religious upbringing, and education. The defendant may voice his objection, if he disagrees with the plaintiff. The court's order is silent as to what occurs if he disagrees and refuses to pay.

At the time of dissolution, the cost of the child's extracurricular activities as listed on the plaintiff's financial affidavit was de minimus. The defendant has failed to demonstrate how he is harmed by the court's order, now, or will be harmed in the future. The trial court could not speculate as to the child's future interests, activities, and the costs thereof. It merely provided a means for the parties to pay for them in the present. If there is a substantial change in circumstances that warrants a change in the court's order regarding payment of the child's extracurricular activities, the defendant is not without a remedy. General Statutes § 46b-56 grants authority to the court to render orders of custody and provides in relevant part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make or *modify* any proper order regarding the custody, care, education, visitation and support of the children . . . . Subject to the provisions of section 46b-56a, the court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent . . . . (b) In making or *modifying* any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve *the best interests of the child* and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ." (Emphasis added.) For the foregoing reasons, we conclude that the court did not abuse its discretion by ordering the defendant to pay 53 percent of the cost of the child's extracurricular activities.

IV

The defendant's next claim is that the court abused its discretion by "equitably distributing property between the parties" without properly determining the value of the real property. We disagree.

In dividing the real property in the marital estate, the court awarded the plaintiff the defendant's rights, title, and interest in Lantern Circle and ordered the defendant to retain his interest in Bend of River. The court accepted the parties' stipulation as to the value of Lantern Circle. In its May 1, 2018 articulation the court stated that, at the time of Monesh's death, Bend of River was valued at $767,656.89 and was encumbered by a mortgage of $600,350, values that were predicated on the defendant's testimony that the widow's will contest had been resolved and the values were listed on the defendant's financial affidavit. In its October 17, 2018 articulation issued in response to this court's order, the court stated in relevant part that neither party provided the court with expert testimony regarding the value of Bend of River and, as a result, the court relied on the testimony of the parties and the parties' financial affidavits to establish the value of Bend of River.

"In distributing the assets of the marital estate, the court is required by § 46b-81 to consider the estate of each of the parties. Implicit in this requirement is the need to consider the economic value of the parties' estates. *The court need not, however, assign specific values to the parties' assets.*" (Emphasis added.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 531, 752 A.2d 978 (1998). "Both parties in a dissolution proceeding are required to itemize all of their assets in a financial affidavit and to provide the court with the approximate value of each asset. . . . *If the parties fail to do so, the equitable nature of the proceedings precludes them from later seeking to have the financial orders overturned on the basis that the court had before it too little information as to the value of the assets distributed.*" (Citation omitted; emphasis added.) Id., 535–36. "In a dissolution action, marital property is valued as of the date of dissolution . . . ." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 661, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

Here, the defendant submitted two financial affidavits. In his affidavit dated October 14, 2015, he listed the estimated value of Bend of River as "unknown." In his affidavit dated April 11, 2016, he listed the date of death value of Bend of River as $767,656.89 with a mortgage of $600,350. The relevant value in a dissolution action is the value as of the date of dissolution. See *Wendt* v. *Wendt*, supra, 59 Conn. App. 661. He listed debts and fees associated with Bend of River but valued them as "TBD" (to be determined) which is the equivalent of not assigning a value to the property. It was the defendant's burden to provide the court with the value of the property on his financial affidavit, which he did not do. Moreover, in his proposed orders, the defendant requested that he be awarded his 1 percent interest in Bend of River.[12] Without evidence of the value of Bend

of River, we conclude that the court acted well within its discretion by awarding the defendant the property as he proposed.

V

The defendant claims that the court abused its discretion by failing to divide all of the parties' personal property.[13] We agree that the court abused its discretion by ordering the parties to divide their household furnishings and computers to their mutual satisfaction.

The record discloses the following facts. In his April 11, 2016 financial affidavit, the defendant listed household furnishings under assets with a value "TBD" (to be determined). In his April 12, 2016 proposed orders the defendant stated, in relevant part, under personal property: "The [plaintiff] shall be entitled to own, have and enjoy, independent of any claim of right of the [defendant], the following: . . . Home furnishings at 63 Lantern Circle . . . in the approximate amount of $10,000, including the new Apple laptop computer, Ethan Allen dining table set and chairs [e]xcluding, however, the Ethan Allen couch. . . . " "The [defendant] shall be entitled to own, have and enjoy, independent of any claim of right of the [plaintiff] the following: . . . The contents of his current rental residence . . . The Ethan Allen couch at . . . Lantern Circle . . . . The Lenovo think pad laptop that the [defendant] used since at least January 2013." The defendant did not value the property.

In her April 11, 2016 financial affidavit, the plaintiff listed under the heading "other assets": jewelry valued at $2500 and home furnishings valued at $10,000. In her proposed orders dated October 13, 2015, under "personal property," the plaintiff stated, in relevant part, that she retain all property in her possession, including all of the personal property left in Lantern Circle and receive from the defendant the "following items currently in his possession: AA1 laptop computer and related accessories, Mac Time Capsule, wine rack from her sister, print of St. John's gift of her parents, all Christmas decorations, iron table lamp, and Vera Bradley laptop bag."

In dissolving the parties' marriage, the court ordered that the plaintiff shall retain ownership of the 2002 Honda motor vehicle and hold the defendant harmless for all expenses associated with it. As to other assets, the court ordered that the "plaintiff shall retain ownership of the jewelry listed in Section IV H of her April 11, 2016 financial affidavit. The parties shall divide the home furnishings listed in Section IV H of the plaintiff's April 11, 2016 financial affidavit to their mutual satisfaction." The order is silent as to what is to occur if the parties could not agree on the division of their personal property. The defendant claims on appeal that by failing to divide every item of personal property, the court left

them in limbo.[14]

As previously stated, under Connecticut law, "courts are empowered to deal broadly with property and its equitable division incident to dissolution proceedings. . . . Generally, [appellate courts] will not overturn a trial court's division of marital property unless it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Citation omitted; internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 355, 880 A.2d 872 (2005). We acknowledge that a court trying a dissolution action is charged with the duty to divide the parties' personal property, and the court abused its discretion by ordering the parties to divide the property on the plaintiff's financial affidavit themselves. The question, however, remains whether the court's failure to do so implicates the mosaic of the court's financial orders.

Our Supreme Court has "characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Accordingly, when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . [Our Supreme Court also has] stated, however, that [e]very improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of other orders in question. Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." (Internal quotation marks omitted.) *Krahel* v. *Czoch*, 186 Conn. App. 22, 45–46, 198 A.3d 103, cert. denied, 330 Conn. 958, 198 A.3d 584 (2018).

Although the court did not divide every item of personal property listed on the parties' financial affidavits or proposed orders as it should have, it appears from the plaintiff's financial affidavit that the value of the undivided personalty is much less than $10,000. Indeed, the only items included in those "home furnishings" to which the defendant stated a claim, albeit a cursory one, were the Ethan Allen couch and Lenovo laptop. Given the value of the real property at issue in this appeal and the lack of disagreement with respect to child support, we "do not conclude that the mosaic rule is implicated"; id., 46; by the court's failure to divide the few home furnishings and computers at issue. Those items of personal property clearly are severable from

the mosaic. We, therefore, reverse the judgment with respect to the parties' personal property and remand the case for further proceedings at which time the court is to divide the personal property, specifically the Ethan Allen couch and Lenovo laptop, that is left to divide, as the parties appear unwilling or unable to agree on matters of even minor value.

## VI

The defendant's last claim is that the trial court abused its discretion when it entered financial orders because they are excessive and he does not have the ability to comply with them. The root of the defendant's claim is that the court improperly ordered him to transfer all his rights, title, and interest in Lantern Circle to the plaintiff by September 1, 2016, and to pay the mortgage and other costs associated with the property until he did so. He claims that it was not possible for him to transfer Lantern Circle to the plaintiff and that he lacked the funds to pay the mortgage and other costs. At most, the court's order required the defendant to pay the mortgage and costs for less than one month.[15] Significantly, the court ordered the plaintiff to pay the mortgage and all of the costs associated with Lantern Circle and to hold the defendant harmless after he transferred the property to her.

As we previously have concluded, the court properly ordered the defendant to transfer all of his rights, title, and interest in Lantern Circle to the plaintiff. Although the court set an end date for the transfer, it did not set a prior date by which the defendant could transfer his interest in Lantern Circle to the plaintiff. If the defendant was unable to pay the mortgage and other costs, he could have transferred his interest in Lantern Circle to the plaintiff immediately following the dissolution. Upon transfer, the plaintiff became responsible for those costs. Whatever financial burden the defendant may have incurred by continuing to pay the mortgage and costs was of his own making as he failed to comply expeditiously with the court's order to transfer his rights, title, and interest in Lantern Circle to the plaintiff. The court, therefore, did not abuse its discretion.

The judgment is reversed only as to the division of the Ethan Allen couch and Lenovo laptop computer, and the case is remanded for further proceedings in that regard; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Trial commenced on October 20, 2015, and continued for twenty nonconsecutive days, ending on April 20, 2016. Although custody of the parties' only child was the primary focus of the lengthy trial, the court's custody orders are not in dispute in the present appeal.

[2] In rendering its decision, the court stated that it fully had considered the criteria set forth in General Statutes §§ 46b-62, 46b-81, 46b-82, and 46b-84 and the applicable case law.

[3] Midtrial, the court appointed a guardian ad litem for the child. Following her investigation, the guardian ad litem reported that she had concerns about the mental health of each of the parties. She recommended that they undergo psychological evaluations and that they participate in coparent-

ing counseling.

[4] Consistent with the child support guidelines, the court ordered the defendant to maintain medical and dental insurance for the child, and ordered the plaintiff to reimburse him 47 percent of the insurance premiums. All unreimbursed medical expenses for the child are to be borne 47 percent by the plaintiff and 53 percent by the defendant. The plaintiff is to maintain life insurance in the amount of at least $250,000 for the benefit of the child and name the defendant beneficiary until the child reaches the age of twenty-three years old. The defendant is to maintain life insurance in the same amount and under similar terms. The plaintiff is to pay 47 percent of the cost of work-related child care and the defendant is to pay 53 percent of such costs. The plaintiff shall pay for 47 percent of the child's extracurricular expenses and the defendant shall pay 53 percent of those expenses. The court retained jurisdiction regarding postmajority educational support for the child pursuant to General Statutes § 46b-56c.

The court also ordered each party to pay the other alimony of one dollar per year as long as any order for child support or postsecondary educational support remains in effect.

[5] A January, 2016, Probate Court decree was placed in evidence by the plaintiff. The decree authorized Vecchiolla to borrow funds because the debts and claims of the estate exceeded its liquid assets. At the time of Monesh's death, he had an interest in a jointly owned checking account at Citibank, N.A., with Mohini and the defendant. The account had a date of death value of $474,254.29. The funds were borrowed from a Citibank, N.A., checking account which at one time was jointly held by Monesh, Mohini, and the defendant. The estate twice borrowed funds in the account in the amounts of $50,000 (from the defendant and Mohini) and $68,462.22 (from Mohini).

[6] The defendant did not raise the question of the court's subject matter jurisdiction at trial. "Nevertheless, because a question of subject matter jurisdiction must be decided once raised . . . we will review the jurisdictional claim only so far as the court's subject matter jurisdiction is concerned." (Citation omitted.) *Kores* v. *Calo*, 126 Conn. App. 609, 619, 15 A.3d 152 (2011). See also *Lichtman* v. *Beni*, 280 Conn. 25, 30, 905 A.2d 647 (2006) (question of jurisdiction must be addressed whenever raised).

[7] We are mindful that § 46b-81 (c) "directs the court to consider numerous separately listed criteria in distributing marital property at the time of the dissolution judgment. . . . Section 46b-81 (c) provides in relevant part: In fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." (Citation omitted; internal quotation marks omitted.) *Coleman* v. *Coleman*, 151 Conn. App. 613, 617, 95 A.3d 569 (2014). See footnote 2 of this opinion.

[8] In the assets portion of his financial affidavit, the defendant listed, among other things, real estate.

"[A] 63 Lantern Circle, Stamford, CT (99 [percent] interest subject to Probate of [Monesh's] estate)

"Appraised Value:$510,000

"Less

"Mortgage:[$367.921]

"Net Equity:$142,079*

"*This does not include the cost of sale, should the court order this property shall be sold. Anticipated costs of sale are: 7 [percent] of the sale price, which includes broker's commission, conveyance taxes, and [attorney's] fees."

[9] The defendant's financial affidavit dated April 11, 2016, stated the *date of death value* of Bend of River and the mortgage debt pursuant to the inventory of Monesh's estate.

"The division of property in dissolution proceedings is governed by . . . § 46b-81(a), which provides in relevant part: At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either spouse all or any part of the estate of the other spouse. . . . Our Supreme Court has recognized that [t]he only temporal reference in the enabling legislation refers us to the time of the decree as controlling the entry of financial orders. It is neither unreasonable nor illogical, therefore, to con-

clude that the same date is to be used in determining the value of the marital assets assigned by the trial court to the parties. *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990). Accordingly, [i]n the absence of any exceptional intervening circumstances occurring in the meantime, [the] date of the granting of the divorce is the proper time by which to determine the value of the estate of the parties upon which to base the division of property." (Emphasis omitted; internal quotation marks omitted." *Merk-Gould* v. *Gould*, 184 Conn. App. 512, 521–22, 195 A.3d 458 (2018).

[10] This appeal does not require us to define the defendant's rights, title, and interest to Lantern Circle, only that the court properly ordered that he transfer them to the plaintiff.

[11] The defendant also claims that the court improperly ordered him to pay the postjudgment expenses relating to Lantern Circle until he could transfer ownership. The basis of the defendant's claim is that he only possessed 99 percent of Lantern Circle and that the remaining 1 percent was under the control of the Probate Court. The defendant, again, has conflated possession and ownership. We have concluded that the court properly ordered the defendant to transfer his all of his rights, title, and interest in Lantern Circle to the plaintiff by September 1, 2016. The trial court's memorandum of decision was issued on August 5, 2016, less than one month before the defendant was ordered to transfer Lantern Circle to the plaintiff. On appeal, the defendant has failed to explain why the court's order that he pay the expenses for Lantern Circle, which he had been paying throughout the divorce proceedings, for less than one month constituted an abuse of the court's discretion or how he was harmed by the order. Nothing prevented the defendant from transferring all of his rights, title, and interest in Lantern Circle to the plaintiff prior to September 1, 2016, thus reducing the amount of time for which he was responsible for the expenses related to the property. The court ordered the plaintiff to pay the mortgage and expenses subsequent to the transfer.

[12] Under Section VII of the financial affidavit, titled Personal Property, the defendant stated in relevant part: "B. The [defendant] shall be entitled to own, have and enjoy, independent of any claim or right of the [plaintiff], the following: 1. His 1 [percent] interest in . . . Bend of River . . . ."

[13] On the basis of our review of the defendant's arguments and the record, it appears that the defendant's claim is limited to household furnishings and a laptop computer. The court's financial order divided the parties' investments, retirement funds, motor vehicles, and bank accounts, and the defendant does not appear to dispute that portion of the court's order.

[14] The record is silent as to what efforts, if any, the parties have made to divide the home furnishings listed on the plaintiff's financial affidavit.

[15] We note that the defendant paid the mortgage and costs associated with Lantern Circle throughout the dissolution trial. He also testified that Mohini was providing him with financial support.

————————————————